Ishmael JAFFREE, et al.,
Plaintiffs-Appellants,

v.

George C. WALLACE, et al.,
Defendants-Appellees,

Douglas T. Smith, et al., Intervenors.

Ishmael JAFFREE, et al.,
Plaintiffs-Appellants,

v.

BOARD OF SCHOOL COMMISSIONERS
OF MOBILE COUNTY, et al.,
Defendants-Appellees,

Douglas T. Smith, et al., Intervenors.

Nos. 83–7046, 83–7047.

United States Court of Appeals,
Eleventh Circuit.

May 12, 1983.

Rehearing and Rehearing En Banc
Denied Aug. 15, 1983.

Ronnie L. Williams, Mobile, Ala., for plaintiffs-appellants.

Jack D. Novik, ACLU, New York City, amicus curiae.

Charles S. Coody, Counsel Dir., Div. of Legal Services, Dept. of Educ., Montgomery, Ala., for Tyson, Creel, Cherry, Higginbotham, Poole, Martin, Allen and Roberts.

Bob Sherling, Mobile, Ala., for intervenors.

John S. Baker, Baton Rouge, La., for Governor Wallace.

Robert C. Campbell, III, Mobile, Ala., for defendant-appellee Bd. of School Com'rs of Mobile County, et al.

Thomas O. Kotouc, Montgomery, Ala., for intervenors McHenry, et al.

Before HATCHETT and CLARK, Circuit Judges, and SCOTT *, District Judge.

HATCHETT, Circuit Judge:

We must decide whether the trial court correctly determined that the recitation of prayers in the Mobile County, Alabama, public schools and the implementation of two Alabama statutes permitting religious practices in those public schools do not violate the establishment clause of the first amendment to the Constitution of the United States.[1] We are not called upon to determine whether prayer in public schools is desirable as a matter of policy. Because we find that the trial court was incorrect, we reverse and remand with directions to the trial court to issue and enforce an injunction prohibiting these unconstitutional practices.

Ishmael Jaffree, the appellant, is the father of five minor children, three of whom are enrolled in the Mobile County, Alabama, public schools. Jaffree's original action challenged the right of teachers in the public schools of Mobile County to conduct prayers in their classes, including group recitations of the Lord's Prayer. Before filing this action, Jaffree attempted to have the teachers discontinue prayer activities in those classes which his children attended. Jaffree held conversations with the teachers, wrote letters to the superintendent of the school board, and made several telephone calls to the superintendent. When these efforts failed to halt the religious practices, Jaffree instituted this action against the appellee, Board of School Commissioners of Mobile County (Board). Jaffree alleged that in addition to the Lord's Prayer, the teachers and students also recited the following three prayers:

(1) God is great, God is good, Let us thank Him for our food, bow our heads we all are fed, Give us Lord our daily bread. Amen.

(2) God is great, God is good Let us thank Him for our food.

(3) For health and strength and daily food we praise Thy name, oh Lord.

Jaffree amended his complaint to include class action allegations, which the district court denied. Jaffree filed a second amended complaint to include as appellees the Governor of Alabama, the attorney general, and other state education authorities. In this amended action, Jaffree challenged the constitutionality of Ala.Code § 16–1–20.1 (1982) and Ala.Code § 16–1–20.2 (former Ala.Act 82–735), which are known as the "Alabama school prayer statutes." Section 16–1–20.1 states that:

At the commencement of the first class of each day in all grades in all public schools, the teacher in charge of the room in which each such class is held may announce that a period of silence not to exceed one minute in duration shall be observed for meditation or voluntary prayer, and during any such period no other activities shall be engaged in.

Section 16–1–20.2 states that:

From henceforth, any teacher or professor in any public educational institu-

---

* Honorable Charles R. Scott, U.S. District Judge for the Middle District of Florida, sitting by designation.

1. U.S. Const., amend I, states that:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

tion within the State of Alabama, recognizing that the Lord God is one, at the beginning of any homeroom or any class, may lead the willing students in the following prayer to God:

Almighty God, You alone are our God. We acknowledge You as the Creator and Supreme Judge of the world. May Your justice, Your truth, and Your peace abound this day in the hearts of our countrymen, in the counsels of our government, in the sanctity of our homes and in the classrooms of our schools. In the name of our Lord. Amen.

The district court severed Jaffree's complaint into two causes of action: one related to those teachers' activities unmotivated by the statutes, and the other related to the statutes.[2] Following the severance, the court issued a preliminary injunction against the implementation of the Alabama school prayer statutes. *Jaffree By and Through Jaffree v. James,* 544 F.Supp. 727 (S.D.Ala.1982). After trial on the merits, the district court dismissed both actions, thereby dissolving the preliminary injunction. *Jaffree v. Board of School Commissioners of Mobile County,* 554 F.Supp. 1104 (S.D.Ala.1983); *Jaffree v. James,* 554 F.Supp. 1130 (S.D.Ala.1983). Pending appeal, Jaffree filed an emergency motion for stay and injunction in this court; we denied the motion.[3] Jaffree requested Justice Powell, in his capacity as Eleventh Circuit Justice, to stay the trial court's order or reinstate the preliminary injunction previously issued by the district court. In a memorandum opinion, Justice Powell granted the stay and reinstated the injunction pending final disposition of the appeal in this court. In the memorandum opinion, Justice Powell stated:

In *Engel v. Vitale,* 370 U.S. 421 [82 S.Ct. 1261, 8 L.Ed.2d 601] (1962), the Court

held that the Establishment Clause of the First Amendment, made applicable to the States by the Fourteenth Amendment, prohibits a State from authorizing prayer in the public schools. The following Term, in *Murray v. Curlett,* decided with *School District of Abington Township v. Schempp,* 374 U.S. 203 [83 S.Ct. 1560, 10 L.Ed.2d 844] (1963), the Court explicitly invalidated a school district's rule providing for the reading of the Lord's Prayer as part of a school's opening exercises, despite the fact that participation in those exercises was voluntary.

Unless and until this Court reconsiders the foregoing decisions, they appear to control this case. In my view, the District Court was obligated to follow them. Similarly, my own authority as Circuit Justice is limited by controlling decisions of the full Court.

*Jaffree v. Board of School Commissioners of Mobile County,* —— U.S. ——, ——, 103 S.Ct. 842, 843, 74 L.Ed.2d 924, 926 (1983).

The contentions of the state and county officials of Alabama are easily stated. First, the county education officials contend that if prayers are being recited in the Mobile County public schools, this activity is without state action or participation and not pursuant to any policy or statute authorizing or encouraging such activities. Second, the Alabama officials contend that the Supreme Court has misread history regarding the first amendment and has erred by holding that the first amendment is made applicable to the states through the fourteenth amendment. They present failure of the *Blaine* amendment of 1876 to pass Congress as strong evidence in support of these contentions.

The district court accepted the premise that the first amendment to the United States Constitution does not prohibit states

---

**2.** This court ordered consolidation of *Jaffree v. Board of School Commissioners of Mobile County,* 554 F.Supp. 1104 (S.D.Ala.1983), and *Jaffree v. James,* 554 F.Supp. 1130 (S.D.Ala. 1983).

**3.** The following were amicus parties on the appeal: Senator John P. East (North Carolina), Concerned Women for American Educational

and Legal Defense Foundation, James Madison Institute—A Project of the North Carolina Conservative Research and Education Institute, Center for Judicial Studies, American Civil Liberties Union, Alabama Civil Liberties Union, American Jewish Congress, and the Anti-Defamation League of B-nai Brith.

from establishing a religion. The district court conceded that its decision was contrary to the entire body of United States Supreme Court and Eleventh Circuit precedent, but declined to follow that precedent because, in its opinion, "the United States Supreme Court has erred in its reading of history." *Board of School Commissioners of Mobile County*, 554 F.Supp. at 1128.

### HISTORY

Two views have been expressed regarding the interpretation of the history surrounding the establishment clause. One view is that the word "establishment" should be interpreted narrowly. Proponents of this view contend that the establishment clause prohibits only Congress, not the states, from establishing a religion. R. Cord, *Separation of Church and State: Historical Fact and Current Fiction* (1982); J. McClellan, *The Making and the Unmaking of the Establishment Clause,* A Blueprint for a Judicial Reform (P. McGuigan and R. Rader eds. n.d. 1981); E. Corwin, *The Supreme Court as a National School Board,* 14 Law and Contemporary Problems 3 (1949).

A second view results in a much broader interpretation of the establishment clause. Proponents of this view contend that the establishment clause prohibits any governmental support of religion on the state or federal level. L. Levy, *Judgments: Essays on American Constitutional History* (1972); L. Pfeffer, *Church, State, and Freedom,* (rev. ed. 1967); R. Dixon, *Religion, Schools and the Open Society,* 13 Journal of Public Law 267, 278 (1964); Katz, *Freedom of Religion and State Neutrality,* 20 U.Chi.L. Rev. 426, 438 (1953). The Supreme Court has supported the broader view. *See Engel v. Vitale,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962); *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1946); H. Chase & C. Ducat, *Constitutional Interpretation, Cases-Essays-Materials,* 1384 (2d ed. 1979).

4. The intervenors, Douglas T. Smith, et al., (more than 500 teachers and parents) basically

The appellees argue that historically the first amendment to the United States Constitution was intended only to prohibit the federal government from establishing a national religion.[4] Appellees, additionally, argue that historical evidence does not support the fourteenth amendment's incorporation of the first amendment. The appellee and the district court rely heavily on the research of historians. These historians believe the Supreme Court misread the history surrounding the establishment clause. They submit that the establishment clause has a dual purpose (1) to guarantee the people of this country that the federal government will not impose a national religion, and (2) to guarantee states the right to define the meaning of religious establishment under their state constitutions and laws.

The Supreme Court, however, has carefully considered these arguments and rejected them. *See, e.g., School District of Abington Township v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *Engel,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *McCollum v. Board of Education,* 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948); *Everson,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1946). In *Everson,* the Court presented its careful review of the history surrounding the establishment clause. Justice Black wrote:

The "establishment of religion" clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another.... In the words of Jefferson, the clause against establishment of religion by law was intended to erect "a wall of separation between Church and State."

*Everson,* 330 U.S. at 15–16, 67 S.Ct. 511–512. Justice Rutledge, while dissenting on other grounds in *Everson,* observed that:

offered the same arguments as the appellees.

Not simply an established church, but any law respecting an establishment of religion is forbidden. The Amendment was broadly but not loosely phrased....

The Amendment's purpose was not to strike merely at the official establishment of a single sect, creed or religion, outlawing only a formal relation such as had prevailed in England and some of the colonies. Necessarily it was to uproot all such relationships. But the object was broader than separating church and state in this narrow sense. It was to create a complete and permanent separation of the spheres of religious activity and civil authority by comprehensively forbidding every form of public aid or support for religion.

"Religion" appears only once in the Amendment. But the word governs two prohibitions and governs them alike. It does not have two meanings, one narrow to forbid "an establishment" and another, much broader, for securing "the free exercise thereof." "Thereof" brings down "religion" with its entire and exact content, no more and no less, from the first into the second guaranty, so that Congress and now the states are as broadly restricted concerning the one as they are regarding the other.

*Everson,* 330 U.S. at 31–32, 67 S.Ct. at 519. Justice Jackson, while dissenting on other grounds, also noted that:

There is no answer to the proposition . . . that the effect of the religious freedom Amendment to our Constitution was to take every form of propagation of religion out of the realm of things which could . . . be made public business . . . . This [religious] freedom was first in the Bill of Rights because it was first in the forefathers' minds; it was set forth in absolute terms, and its strength is its rigidity.

*Everson,* 330 U.S. at 26, 67 S.Ct. at 516. Although differing on the outcome of the case, all Justices perceived the history of the establishment clause as prohibiting any government involvement with religion. This unanimity also existed regarding the history of the first amendment's applicability to the states through the fourteenth amendment.

Appellees suggest that no documentary evidence exists supporting the claim that the fourteenth amendment was intended to apply the establishment clause of the first amendment to the states. To illustrate this point, the appellees turn to the rejection of the "*Blaine* amendment."[5] In 1876, Congress considered a resolution for the adoption of a constitutional amendment expressly forbidding a state from making any law relating to religion. The resolution failed in the Senate. *See* 4 Cong.Rec. 5595 (1876). The appellees argue that this refusal to pass the *Blaine* amendment is indicative of Congress's understanding that the fourteenth amendment left undisturbed the state's freedom to establish religion. This argument is the same as that urged and rejected in *McCollum.* 333 U.S. at 211 n. 7, 68 S.Ct. at 465 n. 7; *McGowan,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Chief Justice Warren, writing for the Court, stated: "[T]he First Amendment, in its final form, did not simply bar a congressional enactment *establishing a church;* it forbade all laws *respecting an establishment of religion.* Thus, this Court has given the Amendment a 'broad interpretation

---

**5.** Title 4 Cong.Rec. 5580 (1876) states, in pertinent part, that:

No State shall make any law respecting an establishment of religion, or prohibiting the free exercise thereof; and no religious test shall ever be required as a qualification for any office of public trust under any State. No public property, and no public revenue of, nor any loan of credit by or under the authority of the United States, or any State . . . shall be appropriated to, or made or used for, the support of any school, educational or other institution, under the control of any religious or anti-religious sect . . . wherein the particular creed or tenets of any religious or anti-religious sect . . . shall be taught; and no such particular creed or tenets shall be read or taught in any school or institution supporting in whole or in part by such revenue or loan of credit; and no such appropriation or loan of credit shall be made to any religious or anti-religious sect . . . to promote its interests or tenets. This article shall not be construed to prohibit the reading of the Bible in any school or institution . . . .

... in light of its history and the evils it was designed forever to suppress.'" *McGowan,* 366 U.S. at 441–42, 81 S.Ct. at 1113 (emphasis in original). In *Engel v. Vitale,* the Court meticulously re-examined the history surrounding the first and fourteenth amendments and reaffirmed its view. The Court concluded that:

> By the time of the adoption of the Constitution, our history shows that there was a widespread awareness among many Americans of the dangers of a union of Church and State.... The First Amendment was added to the Constitution to stand as a guarantee that neither the power nor the prestige of the Federal Government would be used to control, support or influence the kinds of prayer the American people can say—that the people's religions must not be subjected to the pressures of government for change each time a new political administration is elected to office. Under that Amendment's prohibition against governmental establishment of religion, as reinforced by the provisions of the Fourteenth Amendment, government in this country, be it state or federal, is without power to prescribe by law any particular form of prayer which is to be used as an official prayer in carrying on any program of governmentally sponsored religious activity.

*Engel,* 370 U.S. at 429–30, 82 S.Ct. at 1266. The interplay between the first and fourteenth amendments engages scholars in endless debate. We are urged to remain mindful of the uses of history. History provides enlightenment; it appraises courts of the subtleties and complexities of problems before them. *See* Wofford, J., *The Blinding Light: The Uses of History in Constitutional Interpretation,* 31 Univ. of Chi.L.Rev. 502, 532 (1964). The important point is: *the Supreme Court has considered and decided the historical implications surrounding the establishment clause.* The Supreme Court has concluded that its present interpretation of the first and fourteenth amendments is consistent with the historical evidence.

## PRECEDENT

Under our form of government and long established law and custom, the Supreme Court is the ultimate authority on the interpretation of our Constitution and laws; its interpretations may not be disregarded.

■ Although the district court recognized the importance of precedent, it chose to disregard Supreme Court precedent. The district court attempted to justify its actions by discussing the limited exceptions to the doctrine of stare decisis. The doctrine of stare decisis pertains to the deference a court may give to its own prior decisions. *See Hertz v. Woodman,* 218 U.S. 205, 212, 30 S.Ct. 621, 622, 54 L.Ed. 1001 (1910). The stare decisis doctrine and its exceptions do not apply where a lower court is compelled to apply the precedent of a higher court. *See* 20 Am.Jur.2d *Courts* § 183 (1965).

■ Federal district courts and circuit courts are bound to adhere to the controlling decisions of the Supreme Court. *Hutto v. Davis,* 454 U.S. 370, 375, 102 S.Ct. 703, 705–706, 70 L.Ed.2d 556 (1982); *Stell v. Savannah-Chatham County Board of Education,* 333 F.2d 55, 61 (5th Cir.), *cert. denied,* 379 U.S. 933, 85 S.Ct. 332, 13 L.Ed.2d 344 (1964); *Booster Lodge No. 405, Int. Ass'n of M. & A.W. v. NLRB,* 459 F.2d 1143, 1150 n. 7 (D.C.Cir.1972). Justice Rehnquist emphasized the importance of precedent when he observed that "unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Davis,* 454 U.S. at 375, 102 S.Ct. at 706. *See Also, Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* —— U.S. ——, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983) (the Supreme Court, in a per curiam decision, recently stated: "Needless to say, only this Court may overrule one of its precedents."). The old Fifth Circuit articulated these positions when it stated that "no inferior federal court may refrain from acting as required by [a Supreme Court's] decision even if such a court should con-

clude that the Supreme Court erred as to its facts or to the law." *Stell,* 333 F.2d at 61. Judicial precedence serves as the foundation of our federal judicial system. Adherence to it results in stability and predictability. If the Supreme Court errs, no other court may correct it.

## NON–STATUTORY PRAYER ACTIVITIES

The district court did not specifically analyze or discuss in detail the constitutionality of the two Alabama statutes. The court stated: "In light of the reasoning in [the school prayer activities case], the court holds that the claims in this case fail to state any claim for which relief could be granted under the federal statute." *Jaffree,* 554 F.Supp. at 1132. By permitting the Mobile County school prayer activities to survive the first amendment attack, the district court implicitly concluded that the Alabama school prayer statutes were constitutional. 554 F.Supp. at 1132.

The first amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." U.S. Const. amend. I. The objective of the first amendment's religious guarantees are two-fold: to preclude government interference with the practice of religious faith, and to preclude the establishment of a religion dictated by government. *Larkin v. Grendel,* —— U.S. ——, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982). This fundamental and enduring concept of separation of church and state was translated by early decisions into a wall "high and impregnable." *See Reynolds v. United States,* 98 U.S. (8 Otto) 145, 164, 25 L.Ed. 244 (1878); *quoting* Reply from Thomas Jefferson to an address by a committee of the Danbury Baptist Association (January 1, 1802), *reprinted in* 8 Works of Thomas

Jefferson 113 (Washington ed. 1861). The establishment clause requires that government be neutral in its relations between various religions and between non-believers and believers. *Everson,* 330 U.S. at 18, 67 S.Ct. at 513. Repeatedly, the Supreme Court has struck down the recitation of prayers, Bible readings, and devotional activities in public schools. *Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *Engel,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962). This circuit has also followed the Supreme Court's lead in holding that public school prayer is unconstitutional because it is inherently a religious exercise. *Karen B. v. Treen,* 653 F.2d 897 (5th Cir.1981). Having recalled these well-settled principles of constitutional jurisprudence, we now turn to the Mobile County school prayer activities.

The appellee contends that since the teachers' prayer activities were not motivated by school board policy or by state statute, the establishment clause is not violated. The appellee reasons that since no Board policy existed or no statutory authority motivated the teachers' prayer activities, no state involvement exists. Thus, the establishment clause is inapplicable by virtue of the absence of state action.

Under Alabama law, teachers are appointed, suspended, and removed by the county school boards. *See* Ala.Code § 16–8–23 (1927). The Alabama county school boards are creatures of the state and are controlled by the state. *See* Ala.Code § 16–3–11 (1927); Ala.Code § 16–8–8 (1927); *Lee v. Macon County Board of Education,* 267 F.Supp. 458 (M.D.Ala.1967); *Opinion of the Justices,* 276 Ala. 239, 160 So.2d 648, 650 (Ala.1964). It is clear from the record that the Board members were on notice of the teachers' prayer activities and took no steps to discourage these activities.[6]

---

6. The district court found as a fact:

Finally, Ms. Boyd was made aware of the contents of a letter drafted by Mr. Jaffree, dated May 10, 1982, which had been sent to *Superintendent Hammons complaining about the prayer activity in Ms. Boyd's class-*

room.... [*Board of School Commissioners of Mobile County,* 554 F.Supp. at 1107.] Upon learning of the plaintiff's concern over prayer activity in their schools, defendants Reed and Phillips consulted with teachers involved, however, neither defendant advised or instructed the defendant teachers to

Evidence exists to indicate that a large number of teachers discussed the prayer activities with the superintendent of schools. On this record, it is easy to find that the Board's actions ratified the teachers' conduct. If a statute authorizing the teachers' activities would be unconstitutional, then the activities, in the absence of a statute, are also unconstitutional. In *Schempp,* Justice Douglas, in his concurring opinion, pointed out the mockery that would be made of the establishment clause if unconstitutional activities could be carried on merely because no statute authorized the activities. 374 U.S. at 230, 83 S.Ct. at 1575–1576.

■■■■ The Supreme Court has enunciated three standards that a statute must satisfy in order to survive a first amendment attack: first, the statute must have a secular purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; and finally, the statute must not foster "an excessive government entanglement with religion." *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745; *Committee for Public Education and Religious Liberty v. Nyquist,* 413 U.S. 756, 773, 93 S.Ct. 2955, 2965–2966, 37 L.Ed.2d 948 (1973); *Walz v. Tax Commission,* 397 U.S. 664, 674, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697 (1970). *See Murray v. Curlett,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); and *Engel,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962). If a statute does not meet this standard, it must fall to the first amendment's prohibitions. *Stone v. Graham,* 449 U.S. 39, 40–41, 101 S.Ct. 192, 193–194, 66 L.Ed.2d 199 (1980). The objective of these tests is to insure neutrality of government involvement in religious activity. *E.g., Watson v. Jones,* 13 Wall. 679, 728, 20 L.Ed. 666 (1872).

In applying the Supreme Court's *Kurtzman* test, the Eleventh Circuit in the recent case of *American, etc. v. Rabun County Chamber of Commerce,* 678 F.2d 1379 (11th Cir.1982), held that the establishment clause may be violated by actions of state officials where no statute or ordinance authorizes the particular activity. In that case, Judge Tuttle, writing for the court stated:

> In interpreting the Establishment Clause, the Supreme Court has identified three tests to be applied to the challenged *actions* of a state:
>
> (1) Whether the *action* has a secular purpose;
>
> (2) Whether the "principal or primary effect" is one which neither "advances nor inhibits religion;" and
>
> (3) Whether the *action* fosters " 'an excessive government entanglement with religion.' *Waltz [v. Tax Commissioners,* 397 U.S. 664, 674, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697 (1970) ]."

678 F.2d at 1389 (emphasis added).

■■■■ Although prayer activities in public schools may not be statutorily authorized or conducted pursuant to written school board policy, if state action is present and the activities satisfy the statutory test articulated by the Supreme Court as modified by this circuit, the activities may be declared unconstitutional. *See Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). The reach of the establishment clause is not limited by the lack of statutory authorization. *See Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *Murray,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *Engel,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962). Here, we are not concerned with the mechanism used to advance a concept, but the evil against which the clause protects. *See Nyquist,* 413 U.S. at 772, 93 S.Ct. at 2965.

■■■■ This circuit has stated that "prayer is perhaps the quintessential religious practice ... since prayer is a primary religious activity in itself, its observance in public school classrooms [implies a religious purpose]." *Treen,* 653 F.2d at 901. Recognizing that prayer is the quintessential religious practice implies that no secular purpose can be satisfied. The primary effect

discontinue the complained of activity. [554 F.Supp. at 1108.]

of prayer is the advancement of ones religious beliefs. It acknowledges the existence of a Supreme Being. The involvement of the Mobile County school system in such activity involves the state in advancing the affairs of religion. The Supreme Court and this circuit have indicated that such prayer activities cannot be advanced without the implication that the state is violating the establishment clause. *Schempp* and *Treen.* Indeed, the Supreme Court held in *McCollum* that use of a tax-supported building for the advancement of religious activity, in close cooperation with school authorities, violated the establishment clause. *McCollum,* 333 U.S. at 209, 68 S.Ct. at 464; *cf. Zorach v. Clauson,* 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952) (religious instruction off school grounds implemented by New York school board held constitutional). The record indicates that the teachers' prayer activities were conducted in the classrooms and did not appear to be secularly motivated. We, therefore, conclude that the Mobile County school activities are in violation of the establishment clause.

### THE STATUTES

 As to the statutes authorizing prayer, both statutes advance and encourage religious activities. The district court recognized this when it stated:

> The enactment of Senate Bill 8 [Alabama Act 82–735] and § 16–1–20.1 is an effort on the part of the State of Alabama to encourage a religious activity. Even though these statutes are permissive in form, it is nevertheless state involvement respecting an establishment of religion. *Engel v. Vitale,* 370 U.S. 421, 430, 82 S.Ct. 1261, 1266, 8 L.Ed.2d 601 (1962). Thus, binding precedent which this Court is under a duty to follow indicates the substantial likelihood plaintiffs will prevail on the merits.

*James,* 544 F.Supp. at 732. The statutes are specifically the type which the Supreme Court addressed in *Engel.* Aggravating in this case is the existence of a government composed prayer in Ala.Code § 16–1–20.2.

In *Engel,* the Supreme Court held unconstitutional the "non-denominational" state prayer approved for public schools. The prayer involved in *Engel* contained considerably fewer religious references than the prayer now before this court. The Supreme Court stated that "the constitutional prohibition against law respecting an establishment of religion must at least mean that in this country it is no part of the business of government to compose official prayers for any group to recite as part of a religious program carried on by government." *Engel,* 370 U.S. at 425, 82 S.Ct. at 1264. Section 16–1–20.2, as its proponents admit, amounts to the establishment of a state religion. The record reveals that passage of the statute was motivated by religious considerations, and its intention to advance religious beliefs. The fact that the prayer is voluntary and non-denominational does not neutralize the state's involvement. The state must remain neutral not only between competing religious sects, but also between believers and non-believers. *See Schempp,* 374 U.S. at 218, 83 S.Ct. at 1569. The practical effect of this neutrality means that state schools should not function to inculcate or suppress religious beliefs or habits of worship. The implications of the district court's opinion firmly recognizes that Alabama is involving itself in the affairs of religion. Section 16–1–20.2 violates the establishment clause of the first amendment and is therefore unconstitutional.

The objective of the meditation or prayer statute (Ala.Code § 16–1–20.1) was also the advancement of religion. This fact was recognized by the district court at the hearing on the motion for preliminary relief where it was established that the intent of the statute was to return prayer to the public schools. *James,* 544 F.Supp. at 731. The existence of this fact and the inclusion of prayer obviously involves the state in religious activities. *Beck v. McElrath,* 548 F.Supp. 1161 (M.D.Tenn.1982). This demonstrates a lack of secular legislative purpose on the part of the Alabama Legislature. Additionally, the statute has the primary effect of advancing religion. We do not imply that simple meditation or silence

is barred from the public schools; we hold that the state cannot participate in the advancement of religious activities through any guise, including teacher-led meditation. It is not the activity itself that concerns us; it is the purpose of the activity that we shall scrutinize. Thus, the existence of these elements require that we also hold section 16–1–20.1 in violation of the establishment clause.

## CLASS CERTIFICATION

Jaffree sought class certification under rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.[7] The complaint identified as the class, students currently enrolled in the Mobile County public school system. Upon the pleadings, the district court denied Jaffree's class certification.

Under Federal Rule of Civil Procedure 23, a class action determination is left to the sound discretion of the district court. *Zeidman v. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038–39 (5th Cir.1981); 7A C. Wright & A. Miller, Federal Practice and Procedure, § 1785, at 134 (1972). The district court's decision is reversible only when it abuses its discretion. *See Guerine v. J & W Inv., Inc.,* 544 F.2d 863 (5th Cir.1977).

■ Jaffree contends the court abused its discretion by denying class certification without first holding an evidentiary hearing. He cites *Shepard v. Beaird-Poulan, Inc.,* 617 F.2d 87, 89 (5th Cir.1980), as authority for the requirement of an evidentiary hearing. We disagree with Jaffree's reading of *Shepard.* *Shepard* teaches that a district court must hold a hearing if it denies certification on the ground that the plaintiff would not adequately represent the class interest. *Shepard,* 617 F.2d at 89.

In this instance, the court did not deny certification on this ground. We therefore affirm the district court's denial of class certification.

■ Appellees, state superintendent and state board, argue that no case or controversy exists between them and Jaffree. Appellees argue that the statutes give teachers the discretion of leading prayers, not the Board nor the state superintendent. Thus, they argue, neither the state board nor the state superintendent has the authority to implement or enforce the statutes. We find that a case or controversy exists between Jaffree and the county superintendent and county education board. Therefore, federal jurisdiction exists and the case or controversy question regarding the state board and the state superintendent becomes inconsequential.

## CONCLUSION

Supreme Court and Eleventh Circuit precedent regarding prayer in public schools is abundantly clear. No new issues were presented to the district court. In keeping with this precedent, we hold that the Mobile County school prayer activities, Ala.Code § 16–1–20.1 and Ala.Code § 16–1–20.2, are in violation of the establishment clause of the first amendment to the Constitution of the United States. We do not decide today whether prayer in public schools is the proper policy to follow. This court merely applies the principles established by the Supreme Court. While many may disagree on the subject of prayer in public schools, our Constitution provides that the Supreme Court is the final arbiter of constitutional disputes. In this instance, these religious exercises failed to survive

---

7. Fed.R.Civ.P. 23(a) and 23(b)(2) reads, in pertinent part:

 (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will

fairly and adequately protect the interests of the class.

 (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . .

the three standards articulated by the Supreme Court. *See Lemon, Nyquist, Engel,* and *Everson.* Consequently, (1) we reverse the district court's dismissal of these actions, (2) affirm the decision denying class certification, (3) reverse the denial of costs to the appellants, and (4) remand the case to the district court. Upon remand the district court is directed to award costs to appellant and forthwith issue and enforce an order enjoining the statutes and activities held in this opinion to be unconstitutional.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED WITH DIRECTIONS.