Jim NEWMAN, Joe Macon, Julie Brodus, Beverly Finley and Teresa Nelson, Plaintiffs,

v.

CITY OF EAST POINT and Patsy Jo Hilliard, in her official capacity as Mayor of the City of East Point, as well as in her individual capacity, Defendants.

No. CIV.A.1:02–CV0001TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 28, 2002.

Ralph S. Goldberg, Office of Ralph S. Goldberg, Decatur, GA, Frank L. Derrickson, Office of Frank L. Derrickson, Decatur, GA, for Plaintiffs.

*ORDER*

THRASH, District Judge.

This is an action in which the Plaintiffs sought a temporary restraining order against the City of East Point and Patsy Jo Hillard, the Mayor of East Point, from holding a prayer breakfast scheduled for January 12, 2002. The Court held a hearing on January 7, 2002, and verbally denied in part and granted in part Plaintiffs' Motion for a Temporary Restraining Order [Doc. 2 & 3]. This Order is entered to explain in detail the Court's reasons for granting in part and denying in part the motion.

## I. BACKGROUND

For several years, Patsy Jo Hilliard, who serves as Mayor of East Point, has participated in the organization of an annual event known as the Mayor's Community Prayer Breakfast ("Mayor's Prayer Breakfast"). The 2002 Mayor's Prayer Breakfast is scheduled for January 12, 2002, at the Doubletree Hotel in East Point, Georgia. The Plaintiffs, Jim Newman, Joe Macon, Julie Broadus, Beverly Finley and Teresa Nelson, allege that the annual Mayor's Prayer Breakfast is a government sponsored religious activity prohibited by the Establishment Clause of the First Amendment of the United States Constitution. The Plaintiffs assert that the Mayor's Prayer Breakfast is advertised on flyers which were designed, prepared, and printed by employees of the City of East Point on City time, on City paper, using City fax machines, and distributed at an official City event. Plaintiffs argue that this annual event has an obvious religious purpose and that the City's promotion of this event through press releases and solicitations conveys a message of approval or endorsement by the City of East Point. Further, Plaintiffs assert that all of the information released by the Mayor and the City of East Point leads people to believe that the Mayor's Prayer Breakfast is an official City event and that the City itself is a sponsor of, or at least specifically endorses, the Mayor's Prayer Breakfast.

The Defendants the City of East Point and Patsy Jo Hilliard deny that public funds were spent to promote, finance or subsidize the 2002 Mayor's Prayer Breakfast, although they do not deny such actions in prior years. Defendants assert that the Mayor's Prayer Breakfast will not be held on City of East Point or other public property and that the event is funded through private sources. Further, the Defendants challenge the assertion that the City is endorsing the Mayor's Prayer Breakfast by including it in a community events flyer.

In Plaintiffs' Amended Motion for Temporary Restraining Order, Plaintiffs requested that this Court (1) enjoin the City, Mayor or any City Officials from holding any religious breakfast under the auspices of the Mayor and the City of East Point and specifically restrain and enjoin the Defendants from holding or participating in the Mayor's Prayer Breakfast scheduled for January 12, 2002, and (2) enjoin the City from promoting or endorsing in any way the Mayor's Prayer Breakfast including promoting or endorsing the Prayer Breakfast in press releases, announcements, invitations, posters, advertisements or any other means.

## II. INJUNCTIVE RELIEF STANDARD

"A preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites." *Northeastern Fla. Chapter of Ass'n of General Contractors of America v. Jacksonville, Fla.*, 896 F.2d

1283, 1285 (11th Cir.1990). In order to obtain a preliminary injunction, the movant must demonstrate "(1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest." *Zardui–Quintana v. Richard,* 768 F.2d 1213, 1216 (11th Cir.1985); *Gold Coast Publications, Inc. v. Corrigan,* 42 F.3d 1336, 1343 (11th Cir.1994). The same standard applies to a request for a temporary restraining order. *Ingram v. Ault,* 50 F.3d 898, 900 (11th Cir.1995).

### III. DISCUSSION

#### A. STANDING

Defendants first argue that the Plaintiffs lack standing to bring this action. Article III of the United States Constitution limits the judicial power of the federal courts to the resolution of "cases or controversies." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). This limitation on the jurisdiction of the federal courts includes the requirement that plaintiffs have standing. *Saladin v. City of Milledgeville,* 812 F.2d 687, 690 (11th Cir.1987). To have standing, the plaintiff must allege (1) that he has suffered an injury in fact (2) that is fairly traceable to the action of the defendant and (3) that will likely be redressed with a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To allege adequately an injury in fact, a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560, 112 S.Ct. 2130. The Eleventh Circuit

has recognized that the concept of injury for standing purposes is particularly elusive in Establishment Clause cases. *ACLU v. Rabun County Chamber of Commerce, Inc.,* 698 F.2d 1098, 1102 (1983).

In Establishment Clause cases, plaintiffs generally establish the "injury in fact" requirement in one of three ways: (1) demonstrating that their tax monies were spent on the challenged government activities; (2) establishing that in the course of their normal activities they suffered direct and unwelcome contact with government-sponsored religious displays or exercises; or (3) showing that they deviated from their normal routine or refrained from entering public facilities in an attempt to avoid the religious display or exercise. *See Books v. City of Elkhart,* 235 F.3d 292 (7th Cir.2000). Furthermore, the Eleventh Circuit has held that "a non-economic injury which results from a party's being subjected to unwelcome religious statements can support a standing claim, so long as the parties are directly affected by the laws and practices against whom their complaints are directed." *Saladin,* 812 F.2d at 692. In *Saladin,* the fact that the appellants were residents of or near the City of Milledgeville and were "directly affronted" when they came into direct contact with the City seal was enough to establish injury in fact. *Id.* at 693.

In this case, Defendants argue that the Plaintiffs have not established an injury in fact. The Court disagrees. The Plaintiffs are all residents and tax payers of the City of East Point. (Plaintiffs' Complaint, ¶¶ 6–11). Plaintiff Newman (a Buddhist) testified without contradiction that flyers publicizing the Mayor's Community Prayer Breakfast were distributed at the City's Christmas party. Plaintiffs state that they were offended by what they consider the City's direct sponsorship, en-

dorsement and promotion of a Christian religious service. Plaintiffs have also shown that taxpayer funds were used to print the flyers and that they were distributed by the Defendants. Following the precedents set forth in *Rabun County* and *Saladin,* Plaintiffs have established injury in fact. Thus, the Plaintiffs in this case have standing to challenge the constitutionality of the Mayor's Community Prayer Breakfast.

## B. ENDORSEMENT

Any attempt by the Court to articulate a grand theory of Establishment Clause jurisprudence would be hopelessly doomed to failure. Fortunately, the task at hand requires no such grand undertaking. A modest review of the most salient cases dealing with the Establishment of Religion Clause of the First Amendment is appropriate. In *Engel v. Vitale,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962), the Supreme Court was presented with the constitutionality of prayer in the public schools. In New York, classes began each day with a prayer, the content of which was composed by the New York Board of Regents. The Court held that New York State's program of daily prayer constituted a "religious activity" and that the use of the public school system to encourage recitation of such prayer was inconsistent with the Establishment of Religion Clause of the First Amendment. *Id.,* at 424, 82 S.Ct. 1261.

Almost a decade later, in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the Supreme Court held that salary supplements to teachers of secular subjects and direct aid to nonpublic elementary schools violated the Establishment Clause. In *Lemon,* the Supreme Court stated that it would draw lines with reference to the "three main evils [of] ... 'sponsorship, financial support, and active

involvement of the sovereign in religious activity.'" *Lemon,* 403 U.S. at 612, 91 S.Ct. 2105. It was in *Lemon* that the Supreme Court first enunciated the three part test which remains, with one notable exception, the controlling standard for Establishment Clause jurisprudence. "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, [and] finally, the statute must not foster an excessive government entanglement with religion." *Lemon,* 403 U.S. at 612–613, 91 S.Ct. 2105 (citations and internal quotation marks omitted).

Since *Lemon v. Kurtzman,* the Supreme Court's Establishment Clause jurisprudence has been remarkably consistent in sustaining virtually every challenge to government-sponsored religious expression or involvement in the public schools. Notably, however, in *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), the Supreme Court took what appears to be another approach to prayer outside the public school context. In *Marsh* the Supreme Court reviewed the Nebraska legislature's practice of beginning each session with a prayer from a chaplain paid by the State. *Id.,* at 784, 103 S.Ct. 3330. The Supreme Court observed that the "opening of sessions of legislative and other deliberative public bodies with prayer is deeply embedded in the history and tradition of this country." *Id.,* at 786, 103 S.Ct. 3330. The Court rejected the claim that such a well established practice violated the Establishment Clause. *Marsh,* however, has not been interpreted to support the proposition that government-sponsored prayer at all "deliberative public bodies" is presumptively valid. *See Coles v. Cleveland Board of Education,* 171 F.3d 369, 380 (6th Cir.1999). Some courts have interpreted *Marsh* to be a one-of-a-kind precedent. *Id.* at 381.

The apparent doctrinal uncertainty posed by the juxtaposition of *Lemon v. Kurtzman* and *Marsh* is evident in the multiple opinions of the Court in *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). In that case, the Supreme Court held that the display of a creche outside of the county courthouse did violate the Establishment Clause, but a Chanukah menorah displayed next to a Christmas tree outside a City and County building did not violate the Establishment Clause. *Allegheny*, 492 U.S. at 621, 109 S.Ct. 3086. In Justice Blackmun's opinion, he stated that the Court had come to understand the Establishment Clause to mean that "government may not promote or affiliate itself with any religious doctrine or organization, may not discriminate among persons on the basis of their religious beliefs and practices, may not delegate a governmental power to a religious institution, and may not invoke itself too deeply in such an institution's affairs." *Id.*, at 590–591, 109 S.Ct. 3086. The Supreme Court seemed to focus on whether the challenged practice either "has the purpose or effect of 'endorsing' religion." *Id.* at 592, 109 S.Ct. 3086. Further, Justice Blackmun stated that "it has been noted that the prohibition against governmental endorsement of religion preclude[s] government from conveying or attempting to convey a message that religion or a particular religious belief is *favored* or *preferred.*" *Id.* at 593, 109 S.Ct. 3086 (internal quotation marks omitted). Finally, he stated that "the Establishment Clause, at the very least, prohibits government from appearing to take a position on questions of religious belief or from making adherence to a religion relevant in any way to a person's standing in the political community." *Id.* at 594, 109 S.Ct. 3086. Justice O'Connor's concurring opinion also focused upon whether a practice constitutes "en-dorsement of particular religious beliefs" as the critical inquiry in Establishment Clause cases. *Id.* at 625, 109 S.Ct. 3086. This analytical approach seems to command a majority of the Supreme Court. The majority of the Justices certainly rejected the more lenient standard proposed by Justice Kennedy in his concurring and dissenting opinion.

There are also important Eleventh Circuit precedents to consider. The Eleventh Circuit has recognized that "prayer is the quintessential religious practice." *Jaffree v. Wallace*, 705 F.2d 1526, 1534 (11th Cir. 1983). In *Jager v. Douglas County School District*, 862 F.2d 824 (11th Cir.1989), the court considered a constitutional challenge to the practice of giving religious invocations prior to high school football games. The court concluded that it should apply the *Lemon v. Kurtzman* test rather than extend *Marsh* outside of the context of a legislative body. *Jager*, 862 F.2d at 828. Further, the Eleventh Circuit found that these invocations prior to public high school football games had an essentially religious purpose and had the primary effect of advancing religion. *Id.* at 829–831. More recently, in *Adler v. Duval County School Board*, 250 F.3d 1330 (11th Cir. 2001), the court found that the school system's policy of permitting a graduating senior, elected by the senior class, to deliver an unrestricted message of her choice at the beginning or closing of graduation ceremonies was not facially violative of the Establishment Clause. *Id.*, at 1332. The court stated that "[w]hile schools may make private religious speech their own by endorsing it, schools do not endorse all speech that they do not censor." *Id.* at 1333. The Eleventh Circuit stressed that "[w]hether a government activity violates the Establishment Clause is in large part a legal question to be answered on the basis of judicial interpretation of social facts...."

Every government practice must be judged in its unique circumstances." *Id.* at 1336 (quoting *Santa Fe Independent School District v. Doe,* 530 U.S. 290, 315, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000)). In its analysis, the Eleventh Circuit noted several key facts that supported its decision. The court observed that the policy did not contain any restriction on the identity of the student speaker or the content of the message. *Id.* at 1333. Also, school officials had no power to direct that a message, let alone a religious message, be delivered, or to control in any way the content of any message actually to be delivered. *Id.* In addition, the policy did not by its terms invite and encourage religious messages. *Id.* Finally, the court drew the distinction between a private message and a state sponsored message. In *Adler* the court concluded that "no reasonable person attending the graduation could view that wholly unregulated message as one imposed by the state." *Id.* at 1337. Thus, the Establishment Clause was not violated.

In this case, the Plaintiffs have requested a temporary restraining order ("TRO") to enjoin the City, Mayor or any City officials from holding any religious breakfast under the auspices of the Mayor and the City of East Point and specifically restraining and enjoining the Defendants from holding or participating in the Mayor's Prayer Breakfast scheduled for January 12, 2002. Plaintiffs also seek to enjoin the City from promoting or endorsing in any way the Mayor's Prayer Breakfast, including promoting or endorsing the Prayer Breakfast in press releases, announcements, invitations, posters, advertisements, or any other means. In this section of the Order, the Court will address the request to enjoin the City from promoting or endorsing the prayer breakfast.

In order to enjoin the City of East Point from promoting or endorsing the Mayor's Prayer Breakfast, the movants must demonstrate a substantial likelihood that they will ultimately prevail on the merits. The City claims that it is not promoting or endorsing the prayer breakfast. The Plaintiffs have presented substantial evidence that the City has been involved in organizing, promoting and endorsing the breakfasts in the past and some evidence that it has done so for the 2002 Mayor's Prayer Breakfast. First, Plaintiffs have produced a letter from the Mayor on City of East Point letterhead dated October 28, 1999, that advises clergy about the Mayor's Prayer Breakfast and invites them to participate in the planning process. (Plaintiff's Exhibit 3). In addition, this letter solicits donations to help offset the cost of the breakfast and directs these contributions to be sent to the Mayor's Office. (Plaintiff's Exhibit 3). The Plaintiffs also have produced a letter from the Mayor addressed to "friends of the community" dated November 9, 2000, which solicits participation in the planning of the breakfast and asks people to participate as sponsors of the breakfast. (Plaintiffs' Exhibit 4). It is not clear whether this letter was written on City letterhead. Next, Plaintiffs produced several memoranda, all dated January 19, 2001, from the Mayor to the City Director of Finance, requesting disbursements of funds to vendors who provided goods or services in connection with the Mayor's 2001 Prayer Breakfast. (Plaintiffs' Exhibit 5). The vendors were to be paid from a City of East Point bank account. (Plaintiff's Exhibit 5). Plaintiffs' Exhibit 6 is a reply form for the 2001 Mayor's Prayer Breakfast. The form states that checks for attending the breakfast should made payable to the City of East Point and sent to the Mayor's office. (Plaintiffs' Exhibit 6). Plaintiffs also produced an accounting for the 2001 Mayor's

Prayer Breakfast on official City of East Point letterhead. (Plaintiffs' Exhibit 6). Finally, the Plaintiffs produced a flyer that was distributed at a City of East Point sponsored holiday party that lists "City of East Point Dates to Remember" in December, 2001 and January, 2002. The first is the grand opening of a pedestrian bridge; the second is the Mayor's inauguration ceremony; and the third is the Mayor's Community Prayer Breakfast. (Plaintiffs' Exhibit 1). The first two events were official City of East Point events. It is apparent that the flyer was produced by City employees, photocopied on City machines and distributed at the City Holiday Party. The Defendants have offered no evidence to the contrary.

Following both the Supreme Court and Eleventh Circuit precedent, the *Lemon v. Kurtzman* test governs the analysis in this case. *Lemon,* 403 U.S. at 612–13, 91 S.Ct. 2105; *Allegheny,* 492 U.S. at 592–93, 109 S.Ct. 3086; *Jager,* 862 F.2d at 828–29. By analyzing the facts established by the Plaintiffs, it appears that the City of East Point has violated the Establishment Clause because they have failed at least the second prong of the *Lemon* test. The second prong of the *Lemon v. Kurtzman* test asks: "whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval [of religion]." *Jager,* 862 F.2d at 831. The Seventh Circuit, in *Doe v. Village of Crestwood, Illinois,* 917 F.2d 1476 (7th Cir.1990), found that a Roman Catholic mass held during a municipal Italian Festival was sponsored by the village and thus, violated the First Amendment. The court determined that the Village had endorsed Christianity because the information published in the Village paper about the festival would "lead an objective observer to conclude that the Village itself is the sponsor, or at least a sponsor" of the mass. *Id.* The facts in *Doe*

are analogous to those in this case, even assuming that the City has stopped using its bank account to underwrite the breakfast. Here, the Plaintiffs have shown that the City of East Point used City funds to produce, duplicate and distribute a flyer advertising the Mayor's Prayer Breakfast. In addition, the flyer was distributed at a City of East Point event and listed other official City events with it. By doing all of these things, the City of East Point has played more than a *de minimis* part in the promotion of the Mayor's Prayer Breakfast. In fact, an objective observer would most certainly conclude that the City of East Point has endorsed religion, specifically Christianity, by its actions. This clearly fails the second prong of the *Lemon* test. Thus, the Plaintiffs have demonstrated a substantial likelihood that they will ultimately prevail on the merits.

Plaintiffs in this case have also met the remaining three requirements to obtain a TRO. Plaintiffs have shown that they will suffer irreparable injury unless the injunction issues. The Supreme Court, in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at 373, 96 S.Ct. 2673. Because the injury to the Plaintiffs is irreparable, it would clearly outweigh the damage the TRO would cause the Defendants. Finally, the injunction, if issued, would not be adverse to the public interest because the public has a strong interest in assuring that the City of East Point does not violate the First Amendment. Issuing a temporary restraining order here is not against the public interest. Thus, because Plaintiffs have fulfilled all four requirements necessary to issue a TRO, the Mayor in her official capacity and the City of East Point are enjoined from organizing, advertising,

promoting or endorsing the Mayor's Prayer Breakfast. They are enjoined from using City resources or employees on City time for organizing, advertising, promoting or endorsing the Mayor's Prayer Breakfast other than to a *de minimis* extent such as using City telephones to make personal telephone calls consistent with the City's policy on such matters.[1]

### C. PARTICIPATION

In their Amended Motion for a Temporary Restraining Order, the Plaintiffs sought an order prohibiting the Mayor and other City officials from holding or participating in the 2002 prayer breakfast. As noted above, the Plaintiffs must first demonstrate a substantial likelihood that they will ultimately prevail on the merits. The Plaintiffs have failed to meet this burden with respect to their request to enjoin the breakfast or the Mayor's participation in the breakfast. The Constitution was intended to protect the freedom of the individual to worship in his own way. *Engel*, 370 U.S. at 429, 82 S.Ct. 1261. The First Amendment was added to the Constitution to "stand as a guarantee that neither the power nor the prestige of the Federal Government would be used to control, support or influence the kinds of prayer the American people can say . . . ." *Id.* The Mayor and City Officials, as citizens of the Untied States, have a First Amendment right *as individuals* to participate in the Mayor's Prayer Breakfast as long as it is otherwise not in violation of the Establishment Clause. The breakfast can also be called the Mayor's Prayer Breakfast as long as it is not endorsed by the City of East Point in any way. For example, as long as the event takes place at a non-City facility, does not use City funds, does not use City employees to publicize or organize it and is not presented as being endorsed by the City, then the Mayor and any City Officials can participate in the event. In view of the relief granted in the preceding section of this Order, that will be the case here. If the City includes the prayer breakfast in any listing of community events, it should be described merely as Community Prayer Breakfast in order to avoid the appearance of City endorsement. Because the Plaintiffs have failed to demonstrate a substantial likelihood that they will ultimately prevail on the merits, the additional relief requested in the Amended Motion for a Temporary Restraining Order is denied.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for a Temporary Restraining Order [Doc. 2] and Amended Motion for a Temporary Restraining Order [Doc. 3] are GRANTED IN PART AND DENIED IN PART. The motion to enjoin the City, Mayor or any City officials from holding or participating in the Mayor's Prayer Breakfast scheduled for January 12, 2002 [Doc. 3] is DENIED. The motion to enjoin the City from organizing, promoting or endorsing the Mayor's Prayer Breakfast including promoting or endorsing the Prayer Breakfast in press releases, announcements, invitations, posters, advertisements, or any other means [Doc. 2] is GRANTED. At the hearing after the Court announced its ruling, the parties agreed that there was no further evidence or argument to present in the case. Therefore, this Order constitutes the Court's ruling on all requests for temporary, preliminary and permanent relief. The Clerk is directed to enter a final judgment in favor of the Plaintiffs in accordance with this Order.

---

1. In this case, the Court is not required to address the public forum issue.