Ishmael JAFFREE; Jamael Aakki Jaffree, Makeba Green; and Chioke Saleem Jaffree, infants By and Through their best of friend and father, Ishmael JAFFREE, Plaintiffs,

v.

Fob JAMES, in his official capacities as Governor of the State of Alabama and ex officio member of the State Board of Education; Charles Graddick, in his official capacity as Attorney General for the State of Alabama; John Tyson, Jr., Ron Creel, S. A. Cherry, Ralph Higginbotham, Victor P. Poole, Harold C. Martin, James B. Allen, Jr., and Roscoe Roberts, Jr., in their official capacities as members of the Alabama State Board of Education; Wayne Teague, in his official capacity as Superintendent of the Alabama State Board of Education, Defendants.

Civ. A. No. 82-0792-H.

United States District Court,
S. D. Alabama, S. D.

Aug. 9, 1982.

Fob James, III, Ronnie L. Williams, Mobile, Ala., for defendant Fob James.

Charles S. Coody, Counsel Director, Div. of Legal Services, Dept. of Educ., Montgomery, Ala., for defendants Tyson, Creel, Cherry, Higginbotham, Poole, Martin, Allen and Roberts.

Bob Sherling, Mobile, Ala., for intervenors.

## ORDER

HAND, Chief Judge.

This matter coming on for consideration by the Court on the plaintiffs' motion for preliminary injunction and the Court having heard evidence in connection therewith and arguments of counsel, makes the following findings and ruling:

## I. Background

Plaintiffs' theory for injunctive relief is predicated on a violation of the establishment clause of the Constitution of the United States found in the first amendment and incorporated by the fourteenth amendment, which in essence makes the provisions of the first amendment applicable to the laws of the state. *Abington School District v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 S.Ct. 711 (1947). It is contended by the plaintiffs that Alabama Code § 16–1–20.1 and a recent enactment of the state legislature, Senate Bill 8, Alabama Act 82–735, popularly known as the "James Prayer Bill", if carried out would be violative of their constitutional rights as proscribed by the Constitution.

It was the Governor's contention, and since the Governor and the Attorney General had joint representation the Court assumes the Attorney General's contention, that this Court has no jurisdiction over the issues because prayer flows from the Almighty and neither this Court nor any court has jurisdiction over the requirements of the Lord or the prayers of His people. Other than the advancement of this position, neither the Governor nor the Attorney General took any further part in the proceedings.

It was the contention of the defendant, the Alabama State Board of Education, that they were improperly joined in the action and therefore should not be subject to either jurisdiction in regard to the matter or subject to any relief sought. The State School Board maintains that the statutes are permissive in their operation and require no action on the part of the board nor would it permit any action on their part to enforce compliance therewith.

The Court permitted private citizens to intervene. These intervenors contend, among other things, that to deny the right of a citizen to the free exercise of his religion in the schools or elsewhere by legislative or judicial action is to deprive them of their constitutional rights in regard to free speech or in regard to freedom of religion. The position of the intervenors, as established by their evidence, is not totally consistent with the position of the plaintiffs or the defendants, but seems to the Court to be a fresh approach to that now found in the annals of case law.

There was no testimony presented to the Court that any action has been taken in any fashion to enforce or not to enforce the statutes under scrutiny. What the plaintiffs seem to be seeking is prospective relief to preclude the state from taking any action to implement or allow implementation of prayer under this statute or that the mere presence of these laws on the statute books operates as a sufficient threat to the plaintiffs, thus demonstrating a present danger or harm that should be enjoined.

## II. Findings of Fact

The Court makes these findings of fact:

1. Both statutes were properly enacted and are on the statute books of the State of Alabama.

2. The plaintiff's children are students of the public schools of the State of Alabama.

3. The statute is drawn in the permissive and would authorize students and teachers to pray in the schools if they so desired.

4. The plaintiff is an agnostic and finds prayer offensive.

5. The plaintiff contends that he does not desire that his children be indoctrinated along religious lines so they can, at some future date, open-mindedly consider whether or not religion is for them and if anything of a religious nature is given to them now it will serve to poison their minds against this open-mindness.

6. Religion is more than just the Christian faith. Religion can be Christianity, Judaism, Mohammedanism, Buddhism, Atheism, Communism, Socialism, and a whole host of other concepts.

7. Students feel deprived if they are not permitted a free expression of their religion

at any place or time they might elect or choose.

8. Religious freedoms are denied when the school authorities prohibit expression of religious conviction by denying the right to pray or otherwise express themselves.

9. Parental authority is abused and parents feel their rights are trespassed when their teachings to their children are contradicted by the schools or the state when it refuses to allow free expression of religious belief on the campuses of the schools or when their children are required to hear prayers that they do not wish them to hear.

10. Any governmental activity, be that by the federal government through its legislative, judicial or executive branches or any state or county legislature or authority, through its board, bureaus, legislatures, courts or executives, that prescribes or proscribes the conduct of religion is offensive to all citizens and the Constitution.

## 1. Subject Matter Jurisdiction

■ Plaintiffs' allege that defendants have violated 42 U.S.C. § 1983, 42 U.S.C. § 1988, and the first and fourteenth amendments to the Constitution of the United States. This Court has jurisdiction over the claims of the plaintiffs pursuant to 28 U.S.C. § 1331 and § 1343(3). There is a substantial controversy between these parties having adverse legal interests of sufficient immediacy and reality to warrant a determination whether preliminary injunctive relief should issue. *See e.g. Lake Carrier's Association v. MacMullan*, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972).

## 2. Preliminary Injunction

To obtain preliminary injunctive relief, it must be demonstrated that: 1) the injunction would not be adverse to the public interest; 2) the threatened injury to the movant outweighs the damage which the injunction may cause the opponent; 3) irreparable injury will be suffered unless the injunction issues; and 4) the movant has a substantial likelihood of success on the merits. *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

An analysis of these factors reveals that the public has an interest in preserving constitutional rights and protections afforded by the first amendment. The assertion of such rights effectively advances the public interest. Enjoining the possible infringement of these rights will not disserve the public interest.

■ The injury to plaintiffs from the possible establishment of a religion by the State of Alabama contrary to the proscription of the establishment clause outweighs any indirect harm which may occur to defendants as a result of an injunction. Granting an injunction will merely maintain the status quo existing prior to the enactment of the statutes.

■ The Supreme Court has consistently maintained that the basis for injunctive relief is a showing of irreparable injury. *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 61, 95 S.Ct. 2069, 2077, 45 L.Ed.2d 12 (1975); *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–507, 79 S.Ct. 948, 954–955, 3 L.Ed.2d 988 (1959); *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944). Plaintiffs have asserted the threat of impairment of the first amendment establishment clause. The impairment or "loss of first amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).

■ Finally, plaintiffs must establish the substantial likelihood that they will prevail on the merits. This Court adheres to the philosophy of *stare decisis* and has expressed itself in the past that the modern trend of handling matters on a case-by-case basis is destructive of the judicial system and precludes the citizens of this country from their right to know what the law is and how to follow consistent patterns of

conduct in their day-to-day activities. The author of this opinion likewise took an oath before God that he would uphold the laws of the United States. Being consistent with this philosophy and to this oath, the Court is obligated to follow the decision law on this sensitive question.[1] The clear import of these controlling decisions appears to the Court to be that the state should not involve itself in either prescribing or proscribing religious activity.

The first amendment, as incorporated by the fourteenth amendment, commands that the state legislature "shall make no law respecting an establishment of religion, *or prohibiting the free exercise thereof.*" The Supreme Court has referred to a three-part test of any law challenged on establishment grounds: 1) the law must clearly reflect a secular purpose; 2) it must have a primary effect that neither advances nor inhibits religion; and 3) it must avoid excessive government entanglement with religion. *Lemon v. Kurtzman,* 403 U.S. 602, 612–613, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). If a statute violates any of these three principles, it must be struck down under the establishment clause. *Stone v. Graham,* 449 U.S. 39, 40–41, 101 S.Ct. 192, 193, 66 L.Ed.2d 199 (1980).

Senate Bill 8 provides in pertinent part:

To provide for a prayer that may be given in the public schools and educational institutions of this state.

BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

Section 1. From henceforth, any teacher or professor in any public educational institution within the State of Alabama, recognizing that the Lord God is one, at the beginning of any homeroom or any class, may pray, *may lead willing students in prayer,* or may lead the willing students in the following prayer to God:

Almighty God, You alone are our God. We acknowledge You as the Creator and Supreme Judge of the world. May Your justice, Your truth, and Your peace abound this day in the hearts of our countrymen, in the counsels of our government, *in the sanctity of our homes* and in the classrooms of our schools *in the name of our Lord.* Amen. (Emphasis in the original).

The Code of Alabama § 16–1–20.1 provides in pertinent part:

At the commencement of the first class of each day in all grades in all public schools, the teacher in charge of the room in which each such class is held may announce that a period of silence not to exceed one minute in duration shall be observed for meditation or voluntary prayer, and during any such period no other activities shall be engaged in.

Ala.Code § 16–1–20.1 (1981).

The purpose of Senate Bill 8, as evidenced by its preamble, is to provide for a prayer that may be given in public schools. Senator Holmes testified that his purpose in sponsoring § 16–1–20.1 was to return voluntary prayer to the public schools. He intended to provide children the opportunity of sharing in their spiritual heritage of Alabama and of this country. *See* Alabama Senate Journal 921 (1981). The Fifth Circuit has explained that "prayer is a primary religious activity in itself. . . ." *Karen B. v. Treen,* 653 F.2d 897, 901 (5th Cir. 1981). The state may not employ a religious means in its public schools. *Abington School District v. Schempp,* 374 U.S. 203, 224, 83 S.Ct.

---

1. *Treen v. Karen B.,* 50 U.S.L.W. 3587, —— U.S. ——, 102 S.Ct. 1267, 71 L.Ed.2d 455 (1982), affg. *Karen B. v. Treen,* 653 F.2d 897 (5th Cir. 1981); *Stone v. Graham,* 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980); *Committee for Public Education v. Nyquist,* 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973); *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971); *Walz v. Tax Commission,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970); *Chamberlin v. Dade County Board of Public Instruction,* 377 U.S. 402, 84 S.Ct. 1272, 12 L.Ed.2d 407 (1964); *Abington School District v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *Engel v. Vitale,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962); *Lubbock Civil Liberties Union v. Lubbock School District,* 669 F.2d 1038 (5th Cir. 1982); *Meltzer v. Board of Public Instruction,* 548 F.2d 559 (5th Cir. 1977), *reh. en banc* 577 F.2d 311 (1978), cert. den. 439 U.S. 1089, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979).

1560, 1572, 10 L.Ed.2d 844 (1963). Since these statutes do not reflect a clearly secular purpose, no consideration of the remaining two-parts of the *Lemon* test is necessary.

■ The enactment of Senate Bill 8 and § 16–1–20.1 is an effort on the part of the State of Alabama to encourage a religious activity. Even though these statutes are permissive in form, it is nevertheless state involvement respecting an establishment of religion. *Engel v. Vitale*, 370 U.S. 421, 430, 82 S.Ct. 1261, 1266, 8 L.Ed.2d 601 (1962). Thus, binding precedent which this Court is under a duty to follow indicates the substantial likelihood plaintiffs will prevail on the merits.

■ The Court does not find the same potential infirmity with § 16–1–20 for it is a statute which prescribes nothing more than a child in school shall have the right to meditate in silence and there is nothing wrong with a little meditation and quietness. A quiet moment would " 'still the tumult of the playground and start a day of study.' " *Abington School District v. Schempp*, 374 U.S. 203, 281 n.57, 83 S.Ct. 1560, 1602 n.57, 10 L.Ed.2d 844 (1963) (quoting the Washington Post, June 28, 1962, § A, 22, col. 2).

The case law, in the opinion of the Court, has overlooked the totality of what is religion in its consideration when deciding issues under the establishment clause of the Constitution. The background of this country and its laws is one based upon the Judeo-Christian ethic. It is apparent from a reading of the decision law that the courts acknowledge that Christianity is the religion to be proscribed. Webster defines religion as "a cause, principle, system of tenets held with ardor," or "a value held to be of supreme importance." The religions of atheism, materialism, agnosticism, communism and socialism have escaped the scruti-

ny of the courts throughout the years, and make no mistake these are to the believers religions; they are ardently adhered to and quantitatively advanced in the teachings and literature that is presented to the fertile minds of the students in the various school systems. If the courts are to involve themselves in the proscription of religious activities in the schools, then it appears to this Court that we are going to have to involve ourselves in a whole host of areas, such as censoring, that we have heretofore ignored or overlooked. An example of what the Court heard reflecting on this point is in connection with the claimed use of foul language in literature read by a fourth grader and, though it might seem innocuous to some to condemn the use of the word "Goddamn" as it is used in the writings that are required reading, it can clearly be argued that as to Christianity it is blasphemy and is the establishment of an advancement of humanism, secularism or agnosticism. If the state cannot teach or advance Christianity, how can it teach or advance the Antichrist?[2]

It should become at once obvious to all that such an involvement by the courts would open a legal Pandora's box—a quagmire from which we could never extricate ourselves. Longmindedness requires and demands a review of where we are, where we want to go, and how best to get there.

It is important to note what the Court is not deciding in this case. During the hearing, many of the intervenors expressed concern over the ability of the government to silence their childrens' prayers. The analysis up to this point has focused on the establishment clause. The first amendment contains another majestic freedom: "Congress shall make no law . . . abridging the freedom of speech . . . ."

■ Clearly, the freedom of individuals to hold religious beliefs and opinions is ab-

---

**2.** It is common knowledge that miscellaneous doctrines such as evolution, socialism, communism, secularism, humanism, and other concepts are advanced in the public schools. Teachers adhering to such tenets are more likely to expose their students to these ideas.

Reading, teaching or advancing Biblical principles however is strictly prohibited. It is time to recognize that the constitutional definition of religion encompasses more than Christianity and prohibits as well the establishment of a secular religion.

solute and may not be restricted by legislative or judicial mandates in any way. Students in the public school system have the absolute right to pray silently to their God at any time. Moreover, verbal prayer to the God of one's choice is "protected speech" under the first amendment. Children, while at school, have the constitutional right, subject to time-place-and-manner limitations, to verbally pray to their God.

Of course, prayer, like any other form of protected speech, can be subjected to time, place and manner restrictions. Governmental restrictions regulating the time, place, and manner of speech will be invalid unless they are nondiscriminatory, in furtherance of a compelling state interest and they are tailored to accommodate the states' compelling interest in the least restrictive manner possible under the circumstances. *Hynes v. Metropolitan Government*, 478 F.Supp. 9 (D.C.Tenn.1979).

Generally, a student or teacher should be able to pray at school whenever it would be permissible for him to speak. For example, without state involvement, it would usually be appropriate for a teacher or child to pray before school, during class recess, at lunch, after school, and during the ride home in the school bus. Many of the intervenors who testified recognized that public prayer could, on occasions, be disruptive. If public prayer were disruptive, these witnesses conceded, the state could properly restrict the right of a student to pray publicly. This intuitive conclusion expressed by several witnesses meshes with first amendment theory.

Following the oath of office and the law and theory of *stare decisis*, this Court is obligated to enjoin the enforcement of Senate Bill 8, Alabama Act 82–735 and § 16–1–

20.1 pending a hearing on the merits. In so doing however, this Court makes it absolutely clear that by this injunction it holds only that the State of Alabama must remain neutral in respect to establishing a religion. Similarly, through its legislative enactments the state may not coerce or encourage participation in religious activities. But equally important, the state may not prohibit students or teachers who wish to pray, whether publicly or privately, from doing so except in very limited circumstances. This Court will not by judicial fiat delineate what a teacher or student may do in regard to his personal religious benefits for these are matters of personal conscience.[3]

**3.** The Court is not unmindful of the argument that students are captive in the classroom and that this affects their ability to accept or reject what is going on around them. Likewise, the Court is not unmindful of the argument advanced in connection with trash on television that if you don't like it you may change stations or turn it off. If we are to have first amendment freedoms when do we say that they apply; at age two, at age four, at age six, or at age twenty? Our society is such that the indi-

vidual is pulled in many directions all the time by conflicting philosophies. Opinions and life require that we make many determinations in regard to what we will accept and reject and these requirements begin at birth and last until death. We cannot go through life empty headed. It is fallacious thinking to judicially mandate when we must commence accepting or rejecting ideas and in what areas we are to be protected and for how long.