**Douglas T. SMITH, et al.,
Plaintiffs-Appellees,**

v.

**BOARD OF SCHOOL COMMISSION-
ERS OF MOBILE COUNTY, et
al., Defendants,**

**Alabama State Board of Education, its
Members, and Wayne Teague, Alabama
State Superintendent of Education, De-
fendants-Appellants.**

**Douglas T. SMITH, et al.,
Plaintiffs-Appellees,**

v.

**Guy HUNT, Governor of Alabama, et
al., Defendants,**

**Malcolm Howell, Corinne Howell, Wil-
liam P. Rodgers, Lemoine V. Brennan,
Thomas A. Brennan, Alan V. Galdis,
Barbara J. Bassett, Betty Ann Barnett
Gartman, William David Gartman,
Elizabeth T. Long, Vernon Moore,
Brenda C. Moore, Defendants-Inter-
venors, Appellants.**

No. 87–7216.

United States Court of Appeals,
Eleventh Circuit.

Aug. 26, 1987.

Jim R. Ippolito, Jr., Office of Gen. Counsel State Dept. of Educ., Montgomery, Ala., for Alabama State Bd. of Educ., et al.

Johnstone, Adams, Bailey, Gordon & Harris, Richard T. Dorman, Mobile, Ala., Hogan & Hartson, William A. Bradford, Jr., Washington, D.C., Deborah A. Ellis, Joan E. Bertin, American Civil Liberties Union, New York City, for defendant-intervenors.

Drinkard, Sherling & York, Bob Sherling, Mobile, Ala., Parker & Kotouc, P.C., Thomas O. Kotouc, Thomas F. Parker, IV, Montgomery, Ala., Robert K. Skolrood, National Legal Foundation, Virginia Beach, Va., for Smith, et al.

Jay Worona, New York State School Boards Ass'n. Inc., Norman H. Gross, Albany, N.Y., for amicus New York State School Boards Ass'n.

Bredhoff & Kaiser, Robert H. Chanin, Jeremiah A. Collins, L. Hope O'Keeffe, Washington, D.C., for amici National Educ. Ass'n and Alabama Educ. Ass'n.

Gordon J. Gamm, Kansas City, Mo., for amicus American Humanist Ass'n.

Seyfarth, Shaw, Fairweather & Geraldson, Ronald A. Lindsay, Washington, D.C., for amicus Council for Democratic and Secular Humanism.

Sidley & Austin, Newton N. Minow, Mary Hutchings Reed, Chicago, Ill., for amicus American Library Ass'n.

Ennis, Friedman & Bersoff, Mark D. Schneider, Washington, D.C., Weil, Gotshal & Manges, R. Bruce Rich, New York City, Evan M. Tager, Washington, D.C., for amici Ass'n of American Publishers and The Freedom to Read Foundation.

Miller, Cohen, Martens & Ice, P.C., Bruce A. Miller, Stuart M. Israel, Maria M. Fernandez, Southfield, Mich., for amicus American Federation of Teachers, AFL-CIO.

Gwendolyn H. Gregory, Alexandria, Va., Balch & Bingham, David R. Boyd, Montgomery, Ala., for amici Nat'l School Boards Ass'n and Alabama Ass'n of School Boards.

Covington & Burling, David H. Remes, Washington, D.C., for amicus The Ad Hoc Coalition for Public Educ.

Kramer, Levin, Nessen, Kamin & Frankel, Harold P. Weinberger, New York City, for amici The American Jewish Committee, et al.

Boothby, Ziprick & Yingst, Lee Boothby, Berren Springs, Mich., for amicus Council on Religious Freedom.

Stephen A. West, Raleigh, N.C., for amicus The Ass'n for Public Justice.

Michael J. Woodruff, Center for Law & Religious Freedom, Samuel Ericsson, Michael A. Paulsen, Heidi Hagerman, Walter M. Weber, Merrifield, Va., for amici The Catholic League for Religious and Civil Rights and The Christian Legal Soc.

Kerry L. Morgan, Chesapeake, Va., for amicus The Committee on The American Founding.

John Eidsmoe, Tulsa, Okl., for amicus The Ad Hoc Comm. to Oppose the Establishment of Humanism.

Wendell R. Bird, Atlanta, Ga., for amicus Rabbinical Alliance of America.

Before JOHNSON and CLARK, Circuit Judges, and EATON [*], Senior District Judge.

JOHNSON, Circuit Judge:

Appellants, Alabama State Board of Education and Wayne Teague ("Board") and Malcolm Howell, et al. ("Defendant-Intervenors") appeal the district court's order enjoining the use in Alabama public schools of forty-four textbooks approved by the Board for inclusion on the State-Adopted Textbook List, the use of which the district court found to be a violation of the establishment clause of the first amendment. We reverse.

## I. BACKGROUND

### A. Procedural History

This case is a continuation of the Alabama school prayer cases, *Jaffree v. Board of School Comm'rs*, 554 F.Supp. 1104 (S.D. Ala.1983), *aff'd in part, rev'd in part sub nom. Jaffree v. Wallace*, 705 F.2d 1526 (11th Cir.1983), *cert. denied sub nom. Board of School Comm'rs v. Jaffree*, 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 181 (1984); *Jaffree v. James*, 554 F.Supp. 1130 (S.D.Ala.1983), *aff'd in part, rev'd in part sub nom. Jaffree v. Wallace*, 705 F.2d 1526 (11th Cir.1983), *aff'd*, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985), 466 U.S. 924, 104 S.Ct. 1704, 80 L.Ed.2d 178 (1984). In May 1982, Ishmael Jaffree brought an action on behalf of three of his minor children pursuant to 42 U.S.C.A. § 1983 against the Mobile County School Board, various school officials, and three teachers seeking, *inter alia*, a declaratory judgment that certain classroom prayer activities conducted in the Mobile public school system violated the establishment clause of the first amendment and an injunction against classroom prayer. By his second amended complaint, Jaffree added as defendants the Governor of Alabama and other state officials, including Appellant Board, and challenged three Alabama statutes relevant to the school prayer issue as violative of the establishment clause. Douglas T. Smith and others ("Appellees") filed a motion to intervene in the Jaffree action alleging that an injunction against religious activity in the public schools would violate their right to free exercise of religion, and the district court allowed them to intervene as defendants. Subsequently, Appellees filed a motion entitled "Request for Alternate Relief" in which Appellees requested that, if an injunction were granted in favor of Jaffree, that injunction be enforced "against the religions of secularism, humanism, evolution, materialism, agnosticism, atheism and others" or, alternatively, that Appellees be allowed to produce additional evidence showing that these religions had been established in the Alabama public schools.

The district court bifurcated the claims against the Mobile County and local defendants and the claims against state officials. The district court granted Jaffree's motion for a preliminary injunction against enforcement of two of the challenged statutes, Ala.Code Ann. §§ 16–1–20.1 and 16–1–20.2, *Jaffree v. James*, 544 F.Supp. 727, 732 (S.D.Ala.1982), but determined after trial on the merits that Jaffree was not entitled to relief in either action because the Supreme Court of the United States had erred in holding that the establishment clause of the first amendment prohibits the states from establishing a religion. *Jaffree v. Board of School Comm'rs*, 554 F.Supp. 1104, 1128 (S.D.Ala.1983), *aff'd in part, rev'd in part sub nom. Jaffree v. Wallace*, 705 F.2d 1526 (11th Cir.1983), *cert. denied sub nom. Board of School Comm'rs v. Jaffree*, 466 U.S. 926, 104 S.Ct. 1707, 80

---

[*] Honorable Joe Eaton, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

L.Ed.2d 181 (1984); *Jaffree v. James*, 554 F.Supp. 1130, 1132 (S.D.Ala.1983), *aff'd in part, rev'd in part sub nom. Jaffree v. Wallace*, 705 F.2d 1526 (11th Cir.1983), *aff'd*, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985), 466 U.S. 924, 104 S.Ct. 1704, 80 L.Ed.2d 178 (1984). The district court therefore dismissed Jaffree's complaint for failure to state a claim upon which relief could be granted. *Id.;* 554 F.Supp. at 1132.

This Court reversed, finding that both the school room prayer activities and sections 16–1–20.1 and 16–1–20.2 violated the establishment clause, and remanded the action to the district court with directions that the district court "award costs to appellant and forthwith issue and enforce an order enjoining the statutes and activities held in this opinion to be unconstitutional." *Jaffree v. Wallace*, 705 F.2d 1526, 1536–37 (11th Cir.1983), *cert. denied in part sub nom. Board of School Comm'rs v. Jaffree*, 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 181 (1984), *aff'd in part*, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985); 466 U.S. 924, 104 S.Ct. 1704, 80 L.Ed.2d 178 (1984). The Supreme Court denied certiorari with regard to the nonstatutory school prayer practices, *Board of School Comm'rs v. Jaffree*, 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 181 (1984), and affirmed this Court's decision with regard to the statutory provisions. *Wallace v. Jaffree*, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985); *Wallace v. Jaffree*, 466 U.S. 924, 104 S.Ct. 1704, 80 L.Ed.2d 178 (1984).

In its opinion denying relief in *Jaffree*, the district court had stated that "[i]f the appellate courts disagree with this Court in its examination of history and conclusion of constitutional interpretation thereof, then this Court will look again at the record in this case and reach conclusions which it is not now forced to reach." *Jaffree*, 554 F.Supp. at 1129. In a footnote, the district court indicated that the issues not reached dealt with (1) the free speech rights of teachers and students who wished to pray in school and (2) the teaching of the religion of secular humanism in the schools. *Id.* at n. 41.[1] On remand, the district court issued an order in response to Jaffree's request for attorney's fees, finding that the relief requested by Appellees had not been

---

**1.** With regard to the secular humanism issue, the district court stated:

> It was pointed out in the testimony that the curriculum in the public schools of Mobile County is rife with efforts at teaching or encouraging secular humanism—all without opposition from any other ethic—to such an extent that it becomes a brainwashing effort. If this Court is compelled to purge "God is great, God is good, we thank Him for our daily food" from the classroom, then this Court must also purge from the classroom those things that serve to teach that salvation is through one's self rather than through a deity.

*Jaffree*, 554 F.Supp. at 1129 n. 41. The district court had expressed similar views on the merits of this issue in its earlier opinion granting a preliminary injunction, which was issued before Appellees had filed their "Request for Alternate Relief":

> The case law, in the opinion of the Court, has overlooked the totality of what is religion in its consideration when deciding issues under the establishment clause of the Constitution.... It is apparent from a reading of the decision law that the courts acknowledge that Christianity is the religion to be proscribed.... The religions of atheism, materialism, agnosticism, communism and social-

ism have escaped the scrutiny of the courts throughout the years, and make no mistake these are to the believers religions; they are ardently adhered to and quantitatively advanced in the teachings and literature that is presented to the fertile minds of the students in the various school systems. If the courts are to involve themselves in the proscription of religious activities in the schools, then it appears to this Court that we are going to have to involve ourselves in a whole host of areas, such as censoring, that we have heretofore ignored or overlooked. An example of what the Court heard reflecting on this point is in connection with the claimed use of foul language in literature read by a fourth grader and, though it might seem innocuous to some to condemn the use of the word "Goddamn" as it is used in the writings that are required reading, it can clearly be argued that as to Christianity it is blasphemy and is the establishment of an advancement of humanism, secularism or agnosticism. If the state cannot teach or advance Christianity, how can it teach or advance the Antichrist?

*Jaffree*, 544 F.Supp. at 732. In that opinion, the district court stated that "[i]t is common knowledge that miscellaneous doctrines such as evolution, socialism, communism, secularism, humanism, and other concepts are advanced in the public schools." *Id.* at n. 2.

fully addressed in the prior decisions in the case and, therefore, remained for consideration by the district court on remand. The district court interpreted the position of the Appellees as that "if Christianity is not a permissible subject of the curriculum of the public schools, then neither is any other religion, and under the evidence introduced it is incumbent upon this Court to strike down those portions of the curriculum demonstrated to contain other religious teachings." For the purpose of considering this issue, the district court *sua sponte* realigned the parties by making Appellees parties plaintiff, consolidated the cases, and invited the parties to submit briefs in support of their positions and to petition the Court to reopen the record for the presentation of additional evidence. The district court stated that the original plaintiffs could withdraw, if they felt their position had been "fully justified," in which case the district court would consider the attorney's fees question, or could remain in the litigation, in which event the motion for attorney's fees would be denied as premature. The original plaintiffs did withdraw, and Appellees filed a position statement in which they asserted, *inter alia,* that the curriculum in the Mobile County School System unconstitutionally advanced the religion of Humanism and unconstitutionally inhibited Christianity, and that the exclusion from the curriculum of "the existence, history, contributions and role of Christianity in the United States and the world" violated their constitutional rights of equal protection, teacher and student free speech, the student's right to receive infor-

mation, and teacher and student free exercise of religion.

The twelve Defendant-Intervenors, who are parents of children currently enrolled, or soon to be enrolled, in the Mobile County School System, filed a motion to intervene as defendants in the action, which was granted by the district court. The district court certified two plaintiff classes: Class A consisting of "all those persons adhering by belief and practice to a theistic religion, who are or will be teachers in the public schools of Alabama" and Class B consisting of "all those persons adhering by belief and practice to a theistic religion, who are Alabama taxpayers and who are or will be parents of children in the public schools of Alabama." Prior to trial, defendants Governor Wallace and the Mobile County Board of School Commissioners agreed to entry of a consent decree in favor of Appellees.

A bench trial was held October 6–22, 1986 with regard to Appellees' claims. Appellees' evidence focused on elementary and secondary school textbooks in the areas of history, social studies, and home economics, which were on the Alabama State Approved Textbook List, and which Appellees argued unconstitutionally established the religion of secular humanism. The district court found that use of forty-four of these textbooks violated the establishment clause of the first amendment, and permanently enjoined the use of the textbooks in the Alabama public schools. *Smith v. Board of School Comm'rs,* 655 F.Supp. 939, 988 (S.D.Ala.1987). This appeal followed.[2]

**2.** Briefs of *amicus curiae* urging reversal of the district court were filed by the following organizations: National Education Association; Alabama Education Association; American Library Association; American Jewish Committee; American Jewish Congress; Americans for Religious Liberty; Americans United for Separation of Church and State; Anti-Defamation League of B'nai B'rith; Central Conference of American Rabbis; Committee for Public Education and Religious Liberty; National Association of Laity (Catholic); National Jewish Community Relations Advisory Council; Union of American Hebrew Congregations; Unitarian Universalist Association; Association of American Publishers; Freedom to Read Foundation; National School Boards Association; Alabama Association of

School Boards; American Federation of Teachers, AFL–CIO; Council for Democratic and Secular Humanism; American Humanist Association; Ad Hoc Coalition for Public Education; New York State School Boards Association; Council on Religious Freedom; Fellowship of Religious Humanists; and North American Committee on Humanism.

Briefs of *amicus curiae* urging affirmance of the district court were filed by the following organizations: Ad Hoc Committee to Oppose the Establishment of Humanism; Catholic League for Religious and Civil Rights; Christian Legal Society; Committee on the American Founding; Rabbinical Alliance of America; Southern Cen-

## II. DISCUSSION

The first amendment provides in pertinent part that "Congress shall make no law respecting an establishment of religion...." The district court found that secular humanism constitutes a religion within the meaning of the first amendment and that the forty-four textbooks at issue in this case both advanced that religion and inhibited theistic faiths in violation of the establishment clause. The Supreme Court has never established a comprehensive test for determining the "delicate question" of what constitutes a religious belief for purposes of the first amendment, and we need not attempt to do so in this case, for we find that, even assuming that secular humanism is a religion for purposes of the establishment clause, Appellees have failed to prove a violation of the establishment clause through the use in the Alabama public schools of the textbooks at issue in this case.

The religion clauses of the first amendment require that states "pursue a course of complete neutrality toward religion." *Jaffree*, 472 U.S. at 60, 105 S.Ct. at 2492; *accord, School Dist. of Abington Township v. Schempp*, 374 U.S. 203, 215, 83 S.Ct. 1560, 1567, 10 L.Ed.2d 844 (1963) ("The government is neutral, and, while protecting all, it prefers none, and it disparages none."). The establishment clause, however, has not been interpreted as requiring mechanical invalidation of all government conduct conferring benefit on or giving special recognition to religion, but rather has been seen as erecting a "blurred, indistinct and variable barrier depending on all the circumstances of a particular relationship." *Lynch v. Donnelly*, 465 U.S. 668, 678–79, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984) (citations omitted). The Supreme Court has developed three criteria to serve as guidelines in determining whether this barrier has been breached by challenged government action:

First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster "an excessive government entanglement with religion."

*Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971) (citations omitted).[3] Governmental action violates the establishment clause if it fails to meet any of these three criteria. *Stone v. Graham*, 449 U.S. 39, 40–41, 101 S.Ct. 192, 193, 66 L.Ed.2d 199 (1980). Although the Supreme Court occasionally has decided establishment cases without utilizing the *Lemon* criteria, *e.g., Marsh v. Chambers*, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), the Supreme Court recently reaffirmed the vitality of the *Lemon* test, noting that the Court has "particularly relied on *Lemon* in every case involving the sensitive relationship between government and religion in the education of our children." *Grand Rapids School District v. Ball*, 473 U.S. 373, 383, 105 S.Ct. 3216, 3222, 87 L.Ed.2d 267 (1985).

In applying the *Lemon* test to a situation involving the public schools, the Court "must do so mindful of the particular concerns that arise in the context of public elementary and secondary schools." *Edwards v. Aguillard*, — U.S. —, —, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987). This special context is one which requires a sensitivity on the part of the court to both the broad discretion given school boards in choosing the public school curriculum, which mandates that courts not intervene in the resolution of conflicts arising in the daily operation of school systems unless basic constitutional values are "directly and sharply implicate[d]," and the pervasive influence exercised by the public schools over the children who attend them, which makes scrupulous compliance with

ter for Law & Ethics; and Association for Public Justice.

**3.** Although the *Lemon* test and the establishment clause itself speak in terms of laws regarding establishment of religion, "[t]he reach of the establishment clause is not limited by the lack of statutory authorization." *Jaffree v. Wallace*, 705 F.2d 1526, 1534 (11th Cir.1983). If state action is present and the activities do not satisfy the *Lemon* criteria, then the activities violate the establishment clause. *Id.*

the establishment clause in the public schools particularly vital. *Epperson v. Arkansas*, 393 U.S. 97, 104–05, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). As the Supreme Court recently explained:

> States and local school boards are generally afforded considerable discretion in operating public schools. At the same time ... we have necessarily recognized that the discretion of the States and local school boards in matters of education must be exercised in a manner that comports with the transcendent imperatives of the First Amendment.
>
> ... Students [in the public schools] are impressionable and their attendance is involuntary. The State exerts great authority and coercive power through mandatory attendance requirements, and because of the students' emulation of teachers as role models and the children's susceptibility to peer pressure. Furthermore, "the public school is at once the symbol of our democracy and the most pervasive means for promoting our common destiny. In no activity of the State is it more vital to keep out divisive forces than in its schools."

*Edwards*, — U.S. at —, 107 S.Ct. at 2577–78 (citations omitted). For these reasons, the Court must be "particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." *Id.* at 2577.

The parties agree that there is no question of a religious purpose or excessive government entanglement in this case and our review of the record confirms that conclusion. Our inquiry, therefore, must center on the second *Lemon* criterion: whether use of the challenged textbooks had the primary effect of either advancing or inhibiting religion.

"The effect prong [of the *Lemon* test] asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval." *Jaffree*, 472 U.S. at 56 n. 42, 105 S.Ct. at 2490 n. 42 (quoting *Lynch*, 465 U.S. at 690, 104 S.Ct. at 1368 (O'Connor, J., concurring)). If government identification with religion conveys such a message of government endorsement or disapproval of religion, then "a core purpose of the Establishment Clause is violated." *Ball*, 473 U.S. at 389, 105 S.Ct. at 3226. In determining the message conveyed by use of the textbooks in this case, we recognize that we must use "particular care" as "many of the citizens perceiving the governmental message are children in their formative years." *Id.* at 390, 105 S.Ct. at 3226.

The district court found that the home economics, history, and social studies textbooks both advanced secular humanism and inhibited theistic religion. Our review of the record in this case reveals that these conclusions were in error. As discussed below, use of the challenged textbooks has the primary effect of conveying information that is essentially neutral in its religious content to the school children who utilize the books; none of these books convey a message of governmental approval of secular humanism or governmental disapproval of theism.[4]

## A. Home Economics Textbooks

The district court found that the home economics textbooks required students to accept as true certain tenets of humanistic psychology, which the district court found to be "a manifestation of humanism." *Smith*, 655 F.Supp. at 987. In particular, the district court found that the books "imply strongly that a person uses the same process in deciding a moral issue that he uses in choosing one pair of shoes over

---

4. As Justice O'Connor has written, the question whether an objective observer would perceive the government action as conveying a message of endorsement or disapproval of religion is one involving the application of law to fact subject to de novo review on appeal. *See Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, — U.S. —, —, 107 S.Ct. 2862, 2874–75, 97 L.Ed.2d 273 (1987) (O'Connor, J., concurring); *Lynch*, 465 U.S. at 693–94, 104 S.Ct. at 1369–70 (O'Connor, J., concurring). We note, however, that the district court's conclusions that the challenged textbooks have the effect of advancing secular humanism and inhibiting theism would not withstand review even under the more deferential clearly erroneous standard of review.

another," [5] and teach that "the student must determine right and wrong based only on his own experience, feelings and [internal] values" and that "the validity of a moral choice is only to be decided by the student." *Id.* at 986.[6] The district court stated that "[t]he emphasis and overall approach implies, and would cause any reasonable thinking student to infer, that the book is teaching that moral choices are just a matter of preferences, because, as the books say, 'you are the most important person in your life.'" *Id.* The district court stated that "[t]his highly relativistic and individualistic approach constitutes the promotion of a fundamental faith claim" that "assumes that self-actualization is the goal of every human being, that man has no supernatural attributes or component, that there are only temporal and physical consequences for man's actions, and that these results, alone, determine the morality of an action." *Id.* at 986–87. According to the district court, "[t]his belief strikes at the heart of many theistic religions' beliefs that certain actions are in and of themselves immoral, *whatever the consequences*, and that, in addition, actions will have extra-temporal consequences." *Id.* at 987 (emphasis in original). The district court stated that "some religious beliefs are so fundamental that the act of denying them will completely undermine that religion" and "[i]n addition, denial of *that* belief will result in the affirmance of a contrary belief and result in the establishment of an opposing religion." *Id.* (emphasis in original). It concluded that, while the state may teach certain moral values, such as that lying is wrong, "if, in so doing it advances a reason for the rule, the possible

different reasons must be explained evenhandedly" and "the state may not promote one particular reason over another in the public schools." *Id.* (footnote omitted).

■ In order to violate the primary effect prong of the *Lemon* test through advancement of religion, it is not sufficient that the government action merely accommodates religion. The constitution "affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility towards any." *Lynch*, 465 U.S. at 672, 104 S.Ct. at 1358. Nor is it sufficient that government conduct confers an indirect, remote or incidental benefit on a religion, *Ball*, 473 U.S. at 393, 105 S.Ct. at 3228; *accord, Committee for Public Ed. & Religious Liberty v. Nyquist*, 413 U.S. 756, 771, 93 S.Ct. 2955, 2965, 37 L.Ed.2d 948 (1973), or that its effect merely happens to coincide or harmonize with the tenets of a religion:

> [T]he Establishment Clause does not ban federal or state regulation of conduct whose reason or effect merely happens to coincide or harmonize with the tenets of some or all religions. In many instances, the Congress or state legislatures conclude that the general welfare of society, wholly apart from any religious considerations, demands such regulation. Thus, for temporal purposes, murder is illegal. And the fact that this agrees with the dictates of the Judaeo-Christian religions while it may disagree with others does not invalidate the regulation. So too with the questions of adultery and polygamy. The same could be said of theft, fraud, etc., because those

---

5. In support of this statement, the district court refers to a passage in one of the home economics textbooks in which the author lists the steps in the decision-making process and states that "[a]s you can see, the steps in decision-making can be applied to something as simple as buying a new pair of shoes" and "can also be applied to more complex decisions such as those which involve religious preferences; education and career choices; the use of alcohol, tobacco and drugs; and sexual habits." F. Parnell, *Homemaking Skills for Everyday Living* 26 (1984). The book lists the steps in decision-making as (1) Define the problem; (2) Establish your goals; (3) List your goals in order of impor-

tance; (4) Look for resources; (5) Study the alternatives; (6) Make a decision; (7) Carry out the decision; (8) Evaluate the results of your decision. *Id.*

6. The district court acknowledged that the textbooks do not explicitly state that the validity of a moral choice is only to be decided by the student, but found that this conclusion was implicit in the books' repetition of statements to the effect that decisions are "yours alone," or "purely personal" or that "only you can decide." *Smith*, 655 F.Supp. at 986.

offenses were also proscribed in the Decalogue.

*McGowan v. Maryland,* 366 U.S. 420, 442, 81 S.Ct. 1101, 1113–14, 6 L.Ed.2d 393 (1961) (citations omitted); *accord, Harris v. McRae,* 448 U.S. 297, 319, 100 S.Ct. 2671, 2689, 65 L.Ed.2d 784 (1980); *Lynch,* 465 U.S. at 682, 104 S.Ct. at 1364. In order for government conduct to constitute an impermissible advancement of religion, the government action must amount to an endorsement of religion. *Lynch,* 465 U.S. at 681, 104 S.Ct. at 1363. Further, the primary effect of challenged government action must be determined in light of the overall context in which it occurs: "[f]ocus exclusively on the religious component of any activity would inevitably lead to its invalidation under the Establishment Clause." *Id.* at 679–80, 104 S.Ct. at 1362.

■ Examination of the contents of these textbooks, including the passages pointed out by Appellees as particularly offensive,[7] in the context of the books as a whole and the undisputedly nonreligious purpose sought to be achieved by their use, reveals that the message conveyed is not one of endorsement of secular humanism or any religion. Rather, the message conveyed is one of a governmental attempt to instill in Alabama public school children such values as independent thought, tolerance of diverse views, self-respect, maturity, self-reliance and logical decision-making. This is an entirely appropriate secular effect. Indeed, one of the major objectives of public education is the "inculcat[ion of] fundamental values necessary to the maintenance of a democratic political system." *Bethel School Dist. No. 403 v. Fraser,* —— U.S. ——, 106 S.Ct. 3159, 3164, 92 L.Ed.2d 549 (1986) (quoting *Ambach v. Norwick,* 441 U.S. 68, 77, 99 S.Ct. 1589, 1594, 60 L.Ed.2d 49 (1979)) (brackets in original). It is true that the textbooks contain ideas that

are consistent with secular humanism; the textbooks also contain ideas consistent with theistic religion. However, as discussed above, mere consistency with religious tenets is insufficient to constitute unconstitutional advancement of religion.

Nor do these textbooks evidence an attitude antagonistic to theistic belief. The message conveyed by these textbooks with regard to theistic religion is one of neutrality: the textbooks neither endorse theistic religion as a system of belief, nor discredit it. Indeed, many of the books specifically acknowledge that religion is one source of moral values[8] and none preclude that possibility. While the Supreme Court has recognized that "the State may not establish a 'religion of secularism' in the sense of affirmatively opposing or showing hostility to religion, thus 'preferring those who believe in no religion over those who do believe,'" *Abington,* 374 U.S. at 225, 83 S.Ct. at 1573 (citation omitted), that Court also has made it clear that the neutrality mandated by the establishment clause does not itself equate with hostility towards religion. *See e.g., id.; McCollum v. Board of Ed.,* 333 U.S. 203, 211–12, 68 S.Ct. 461, 465, 92 L.Ed. 649 (1948); *Engle v. Vitale,* 370 U.S. 421, 433–35, 82 S.Ct. 1261, 1268–69, 8 L.Ed.2d 601 (1962).[9] Rather, the separation of church and state mandated by the first amendment "rests upon the premise that both religion and government can best work to achieve their lofty aims if each is left free from the other within its respective sphere." *McCollum,* 333 U.S. at 212, 68 S.Ct. at 465. Thus, it is a recognition that "[t]he place of religion in our society is an exalted one, achieved through a long tradition of reliance on the home, the church and the inviolable citadel of the individual heart and mind," and not hostility towards religion, which requires that the state re-

---

7. These passages are found in Appendix N of the district court's opinion. *See Smith,* 655 F.Supp. at 999.

8. *See, e.g.,* V. Ryder, Contemporary Living 52 (1985); F. Parnell, Homemaking Skills for Everyday Living 15 (1984); J. Kelly & E. Eubanks, Today's Teen 26 (1981).

9. A contrary conclusion would totally eviscerate the establishment clause: "[i]f the establishment clause is to have any meaning, distinctions must be drawn to recognize not simply 'religious' and 'anti-religious' but 'non-religious' governmental activity as well." *Grove v. Mead School Dist. No. 354,* 753 F.2d 1528, 1536 (9th Cir.), (Canby, J., concurring), *cert. denied,* 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985).

main "firmly committed to a position of neutrality." *Abington*, 374 U.S. at 226, 83 S.Ct. at 1574; *accord, Engle*, 370 U.S. at 431–32, 82 S.Ct. at 1267 ("The Establishment Clause ... stands as an expression of principle on the part of the Founders of our Constitution that religion is too personal, too sacred, too holy, to permit its 'unhallowed perversion' by a magistrate.")

It is obvious that Appellees find some of the material in these textbooks offensive. That fact, however, is not sufficient to render use of this material in the public schools a violation of the establishment clause. *See Epperson*, 393 U.S. at 107, 89 S.Ct. at 272 (quoting *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 505, 72 S.Ct. 777, 782, 96 L.Ed. 1098 (1952)) ("The state has no legitimate interest in protecting any or all religions from views distasteful to them.").[10] The district court erred in concluding that the challenged home economics books advanced secular humanism and inhibited theistic religion.

### B.   History and Social Studies Textbooks

■ The district court's conclusion that the history and social studies textbooks violated the establishment clause was based on its finding that these books failed to include a sufficient discussion of the role of religion in history and culture. The district court found that the history books omit certain historical events with religious significance and "uniformly ignore the religious aspect of most American culture." *Smith*, 655 F.Supp. at 985. The district court found that "[r]eligion, where treated at all, is generally represented as a private matter, only influencing American public life at some extraordinary moments," and that "[t]his view of religion is one humanists have been seeking to instill for fifty years." *Id.* The district court concluded that the history books "assist that effort

by perpetuating an inaccurate historical picture" and held that the books "lack so many facts as to equal ideological promotion." *Id.* The district court also found that the history books "discriminate against the very concept of religion, and theistic religions in particular, by omissions so serious that a student learning history from them would not be apprised of relevant facts about America's history." *Id.* Use of the social studies books was found unconstitutional because the books failed to integrate religion into the history of American society, ignored the importance of theistic religion as an influence in American society and contained "factual inaccuracies ... so grave as to rise to a constitutional violation." *Id.* at 985–86.

It is clear on the record of this case that, assuming one tenet of secular humanism is to downplay the importance of religion in history and in American society, any benefit to secular humanism from the failure of the challenged history and social studies books to contain references to the religious aspects of certain historical events or to adequately integrate the place of religion in modern American society is merely incidental. There is no doubt that these textbooks were chosen for the secular purpose of education in the areas of history and social studies, and we find that the primary effect of the use of these textbooks is consistent with that stated purpose. We do not believe that an objective observer could conclude from the mere omission of certain historical facts regarding religion or the absence of a more thorough discussion of its place in modern American society that the State of Alabama was conveying a message of approval of the religion of secular humanism. Indeed, the message that reasonably would be conveyed to students and others is that the education offi-

---

10.  Indeed, given the diversity of religious views in this country, if the standard were merely inconsistency with the beliefs of a particular religion there would be very little that could be taught in the public schools. As Justice Jackson has stated:

Authorities list 256 separate and substantial religious bodies to exist in the ... United States. ...  If we are to eliminate everything

that is objectionable to any of these warring sects or inconsistent with any of their doctrines, we will leave public education in shreds. Nothing but educational confusion and a discrediting of the public school system can result. ...

*McCollum v. Board of Ed.*, 333 U.S. 203, 235, 68 S.Ct. 461, 477, 92 L.Ed. 649 (1948) (Jackson, J., concurring).

cials, in the exercise of their discretion over school curriculum, chose to use these particular textbooks because they deemed them more relevant to the curriculum, or better written, or for some other nonreligious reason found them to be best suited to their needs. *Cf. Board of Ed. v. Pico,* 457 U.S. 853, 880, 102 S.Ct. 2799, 2815, 73 L.Ed.2d 435 (1982) (Blackmun, J., concurring) ("School officials must be able to choose one book over another, without outside interference, when the first book is deemed more relevant to the curriculum, or better written, or when one of a host of other politically neutral reasons is present" and these decisions "obviously will not implicate First Amendment values.").

Nor can we agree with the district court's conclusion that the omission of these facts causes the books to "discriminate against the very concept of religion." *Smith,* 655 F.Supp. at 985. Just as use of these books does not convey a message of governmental approval of secular humanism, neither does it convey a message of government disapproval of theistic religions merely by omitting certain historical facts concerning them.

The district court's reliance on *Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), to support its conclusion that omission of certain material regarding religion in this case constituted a first amendment violation is misplaced. *Epperson* involved an Arkansas statute that made it a crime to teach the theory of evolution in the public schools. *Id.* at 98, 89 S.Ct. at 266. The Supreme Court found that the law violated the establishment clause under the purpose prong of the *Lemon* test: the state forbade the teaching of evolution because it conflicted with a particular religious doctrine. 393 U.S. at 103, 89 S.Ct. at 269. The Court stated that "the First Amendment does not permit the State to require that teaching and learning must be tailored to the principles or prohi-

bitions of any religious sect or dogma." *Id.* at 106, 89 S.Ct. at 271. Thus, "[t]he State's undoubted right to prescribe the curriculum for its public schools does not carry with it the right to prohibit, on pain of criminal penalty, the teaching of a scientific theory or doctrine *where that prohibition is based upon reasons that violate the First Amendment."* *Id.* at 107, 89 S.Ct. at 272 (emphasis added).

There is no question in this case that the purpose behind using these particular history and social studies books was purely secular. Selecting a textbook that omits a particular topic for nonreligious reasons is significantly different from requiring the omission of material because it conflicts with a particular religious belief.[11] Further, unlike the situation in *Epperson,* which involved total exclusion of information regarding evolution from the school curriculum, Appellees in this case merely complain that the historical treatment of religion in the challenged textbooks is inadequate. Finally, the record indicates that teachers in Alabama were free to supplement the discussion contained in the textbooks in areas they found inadequate. Thus, unlike the situation in *Epperson* where the State of Arkansas had made an attempt to teach the omitted material a criminal offense, there is no active policy on the part of Alabama that prohibits teaching historical facts about religion. There simply is nothing in this record to indicate that omission of certain facts regarding religion from these textbooks of itself constituted an advancement of secular humanism or an active hostility towards theistic religion prohibited by the establishment clause. While these textbooks may be inadequate from an educational standpoint, the wisdom of an educational policy or its efficiency from an educational point of view is not germane to the constitutional issue of whether that policy violates the establishment clause.

---

11. Indeed, Justice Powell has suggested that, because "the States and locally elected school boards should have the responsibility for determining the educational policy of the public schools," interference with the curriculum decisions of these authorities "is warranted only

when the *purpose* for their decisions is clearly religious." *Edwards v. Aguillard,* —— U.S. ——, ——, 107 S.Ct. 2573, 2589, 96 L.Ed.2d 510 (1987) (Powell, J., concurring) (citations omitted) (emphasis added).

*Zorach v. Clauson,* 343 U.S. 306, 310, 72 S.Ct. 679, 682, 96 L.Ed. 954 (1952).[12]

### III. CONCLUSION

[4] The home economics, social studies, and history textbooks at issue in this case do not violate the establishment clause of the first amendment. The district court's conclusions to the contrary reflect a misconception of the relationship between church and state mandated by the establishment clause. What is required of the states under the establishment clause is not "comprehensive identification of state with religion," but *separation* from religion. *McCollum,* 333 U.S. at 210 n. 6, 68 S.Ct. at 465 n. 6 (quoting *Everson v. Board of Ed.,* 330 U.S. 1, 60, 67 S.Ct. 504, 533, 91 L.Ed. 711 (1947) (Rutledge, J., dissenting)). Yet implicit in the district court's opinion is the assumption that what the establishment clause actually requires is "equal time" for religion. Thus, the district court states that, while the state may teach certain moral values, it cannot advance any reason for those values unless "the possible different reasons [are] explained even-handedly," *Smith,* 655 F.Supp. at 987, and finds that history may not be taught constitutionally in the schools unless the textbooks contain more references to the place of religion in history.

"Separation is a requirement to abstain from fusing functions of Government and religious sects, not merely to treat them all equally." *McCollum,* 333 U.S. at 227, 68 S.Ct. at 473 (Frankfurter, J., concurring), *quoted in Abington,* 374 U.S. at 219, 83 S.Ct. at 1570. The public schools in this country are organized

> on the premise that secular education can be isolated from all religious teaching so that the school can inculcate all needed temporal knowledge and also maintain a strict and lofty neutrality as to religion. The assumption is that after the individu-

al has been instructed in worldly wisdom he will be better fitted to choose his religion.

*Abington,* 374 U.S. at 218, 83 S.Ct. at 1569 (quoting *Everson,* 330 U.S. at 23–24, 67 S.Ct. at 515 (Jackson, J., dissenting)). The district court's opinion in effect turns the establishment clause requirement of "lofty neutrality" on the part of the public schools into an affirmative obligation to speak about religion. Such a result clearly is inconsistent with the requirements of the establishment clause.

The judgment of the district court is REVERSED and the case is REMANDED for the sole purpose of entry by the district court of an order dissolving the injunction and terminating this litigation.

REVERSED and REMANDED WITH DIRECTIONS.

---

12. Appellees assert that the district court also found that the use of the challenged textbooks violated their rights to free exercise of religion and to receive information. While the district court at one point does indicate that some of the history books affected the free exercise of religion, *see Smith,* 655 F.Supp. at 985, it is clear that the district court's holding in this case was based solely on a violation of the establishment clause. Further, we find that Appellees have failed to establish a free exercise violation or impingement upon any constitutional right to receive information.